ROBESON & WEAVER *et al. v.* W. B. RAMSEY *et al.*[*]

*(Knoxville.* September Term, 1922).

1. **AUCTIONS AND AUCTIONEERS.** Sellers may not, as against auctioneers, contest validity of by-bids procured by themselves.

   Where the owners of a farm authorized real estate agents to sell the farm at auction, and agreed to pay them a percentage if the sale was satisfactory, and they confirmed it, and it appeared that at the sale of the auctioneer announced that there would be no by-bidding, the owners not contradicting such announcement, they could not, after by-bidders procured by them had bid in certain portions of the land, contend that such bids were not valid and binding. (*Post, p.* 29-32.)

   Cases cited and approved: Davis v. Petway, 40 Tenn., 667; Mullally v. Greenwood, 127 Mo., 138.

   Case cited and distinguished: Heating & Ventilating Co. v. McKnight & Merz, 140 Tenn., 563.

2. **AUCTIONS AND AUCTIONEERS.** Sellers held not entitled to refuse to confirm sale because price not "satisfactory," more than property was worth.

---

[*]On the question of the right of the principal or the auctioneer conducting a sale to make bids see note in 20 L. R. A. 503.

Where defendants, the owners of a farm, authorized plaintiffs to sell the farm at auction, and agreed that if the property did not sell for a price that was "satisfactory" to them they were to pay a certain amount for services rendered, but if they confirmed the sale, then they were to pay five per cent. of the sale price, where the farm brought a price in excess of its value, and with which the owners, as reasonable men, should have been satisfied, they could not, in an action for the percentage, claim that they had refused to confirm because the price was not satisfactory. (*Post, p.* 32.)

3. **AUCTIONS AND AUCTIONEERS.** Bids by Auctioneer, under orders of brokers selling farm at action, held not to prevent recovery of percentage by them.

Where the owners of a farm authorized plaintiffs, who were real estate brokers, to sell the farm at auction, and agreed to pay them a percentage if the price obtained was satisfactory, recovery of such percentage could not be defeated because the brokers instructed the auctioneer to bid for them at the sale; it appearing that such bidding was merely an attempt to make the farm bring a better price, and that complainants were not attempting to assume a position antagonistic to defendants. (*Post, p.* 32-34.)

Cases cited and approved: Keech v. Sandford, 1 White & Tudor's Leading Cases in Equity, 47 to 58; Fox & Pitt v. Mackreth, 1 White & Tudor's Leading Cases in Equity, 105 to 146; Tisdale v. Tisdale, 34 Tenn., 596.

4. **AUCTIONS AND AUCTIONEERS.** Insufficiency of memorandum of sale held no defense in action for commissions on property sold.

Where the owners of a farm authorized plaintiffs, as real estate brokers, to sell the farm at auction, and agreed to pay a percentage if the price for which the farm should sell was satisfactory, they could not defend a suit for commissions, on the ground that the purchasers at the auction were not bound by a memorandum sufficient under the statute of frauds; such purchasers not having refused to comply, with the terms of the sale. (*Post, p.* 34, 35.)

Case cited and approved: Gilchrist v. Martin & Clarke, 86 Tenn., 583.

Robeson & Weaver v. Ramsey.

FROM HAMBLEN.

Appeal from the Chancery Court of Hamblen County.—HON. M. H. GAMBLE, Chancellor.

RUFUS M. HICKEY for appellants.

JAMES A. CARRIGER and JOHN W. GREEN, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

The defendants W. B. Ramsey and Z. G. Sprinkle and A. F. Sprinkle in August, 1920, owned as tenants in common a large farm of about seven hundred and fifty acres, lying in the counties of Cocke, Hamblen, and Jefferson on Chuckey river. On August 5, 1920, these parties entered into a contract with the complainants, licensed real estate agents, whereby the complainants undertook to sell at auction the said farm. Complainants were to do all necessary advertising, offer the usual prizes, furnish an auctioneer, and generally to look after the things required of such agents at a big sale. This contract was reduced to writing, and the third paragraph thereof was as follows:

"It is agreed and understood that if the said property does not sell for a price that is satisfactory to the party of the first part that they are to pay to the party of the second part all actual and legitimate expenses incurred in putting on said sale, which amount shall not exceed $400, this amount to be in full for services rendered, but if the sale of said property is confirmed at the price it brought then the party of the first part is to pay the party of the second part

5%, five per cent., of the amount the property is sold for. It is further understood and agreed by the party of the second part that no part of said property shall be sold unless the price bid on the sale is satisfactory to the party of the first part, and if the sale of $8,000 worth of the property is confirmed by the party of the first part, then the party of the second part is to pay all expenses limited to $400."

The sale was had under the auspices of complainants on August 26, 1920, and the property brought $123,782. This bill was filed to recover five per cent. on said sum by the complainants, which was not paid to them, and the chancellor decreed in their favor. From this decree the defendants have appealed.

After the sale was over A. F. Sprinkle expressed himself as being satisfied with the price the land had brought, and he was willing to confirm. Ramsey and Z. G. Sprinkle, however, asked for a conference with A. F. Sprinkle before announcing their intention with reference to confirmation, and later they decided not to confirm said sale, alleging that the price brought was not satisfactory. It appears without controversy that Ramsey and Z. G. Sprinkle had procured two men from North Carolina, one Roberts and one Byrd, to act as by-bidders at this sale. The farm was sold in several tracts, and a very considerable portion of it was knocked off to Roberts and Byrd.

We think the weight of the proof is that A. F. Sprinkle did not know that these by-bidders had been employed to represent the other tenants in common. It is very clear that the complainants who were conducting this sale did not know that by-bidders were to be employed, or had been employed. They say that they would not undertake to pro-

mote a sale where there were by-bidders, their experience as real estate agents leading them to believe that such sales are seldom confirmed. The auctioneer undoubtedly announced that there would be no by-bidding at the sale. He stated that the owners reserved the right to bid, but that such bids from any of them would be *bona fide*. He further asked, if any one suspected by-bidding that the attention of the auctioneer be called to it. The defendants were present at the sale, and this announcement of the auctioneer was not contradicted by them.

Under these circumstances we do not think, in a controversy with the real estate agents, that the defendants can be heard to say that these bids, made for them by Roberts and Byrd, were not valid and binding. We need not discuss the effect of by-bidding generally on an auction sale. The authorities are not in accord as to this. 2 R. C. L. 1129; *Davis* v. *Petway,* 40 Tenn. (3 Head), 667, 75 Am. Dec., 789. The arrangement to procure by-bidders here was certainly fraudulent as to the complainants, and the defendants cannot rely on such an arrangement for the purpose of avoiding their liability to the complainants.

The defendants, however, insist that the sum brought by the farm at the sale was not a satisfactory price to them, and that for this reason they were within their rights in refusing to confirm said sale. This is the theory put forth by defendants in their testimony. In their answer they admit that the several tracts of land knocked off to the by-bidders brought more than they were worth.

Quite an amount of proof was taken by the complainants and the defendants on the value of this farm at the time of this sale. The great weight of all the proof is that the farm brought more than it was worth—several thou-

sand dollars more. A. F. Sprinkle, who was not responsible for the by-bidding, was entirely satisfied with the price and willing to confirm the sale. He is accordingly not sued in this case.

It is urged for the defendants that under the terms of their contract with the agents they were not obligated to confirm the sale made, unless it was satisfactory to defendants, and that defendants had the absolute right to determine whether or not the price was satisfactory, and to act accordingly. This brings us to a consideration of the meaning of the word "satisfactory" in a contract like this.

In *Heating & Ventilating Co.* v. *McKnight & Merz,* 140 Tenn., 563, 578, 205 S. W., 419, 423, the court, speaking through Chief Justice NEIL, said:

"There is a conflict in the authorities as to the meaning of the term 'satisfactory,' so used in a contract. It is held, perhaps, by the weight of authority, that where such term appears in the contract, the party in whose favor it was reserved has the absolute right to determine the question, and to act accordingly—that is, either accepting or rejecting the work, provided his act is not merely capricious. Other authorities hold that such term is fully met where the work, as done, should be satisfactory to a reasonable man. Without now deciding between these two views, it is sufficient to say that this particular term was not lightly used in the contract. It was made the subject of correspondence between the parties. Complainant was very loath to use it, saying it had had so much trouble with agreements in which this word appeared that it had ceased to admit such term into its contracts. Williamson insisted, and would sign no other; thereupon the complainant yielded. So we think the parties must have understood

that Williamson was to have the absolute right to determine for himself whether the work as done effected a result satisfactory to himself. We think his determination was not capricious, because he would not have spent the additional sum which he did spend merely to satisfy a caprice." *Heating & Ventilating Co.* v. *McKnight & Merz,* supra.

All that was decided in the case just mentioned was that the correspondence and negotiations showed it was the intention of the parties that the purchaser was to have the absolute right to determine whether the heating and ventilating apparatus was satisfactory to him and the intention of the parties as developed was put into effect.

The circumstances of this case do not convince us that the parties had any such intention in the use of the word "satisfactory," and we must construe this contract by the application of general principles.

The cases involving the construction of the word "satisfactory" are too numerous and too conflicting to be reviewed here. They will be found collected in 13 C. J., 675 et seq., 6 R. C. L., 952 et seq.; Elliott on Contracts, section 1603.

It seems from these authorities that where the contract involves the feelings, taste, or sensibilities, as a costume or a painting, it is ordinarily held that the buyer has an absolute right to determine for himself whether the article furnished or work done is satisfactory.

Where the contract involves operative fitness or mechanical utility, as the character of machinery sold or installed, the decisions are more conflicting; many holding performance sufficient if it reasonably ought to satisfy, or should be satisfactory to a reasonable man.

The courts always seek to gather the intention of the parties, and many cases are influenced by some indication of that intention other than the bare use of the term under notice.

It seems to us that where a contract involves an even grosser consideration of mere value, as where the compensation of an agent for sale depends on his procuring a satisfactory value for something that has a market value, the agent should be declared to have earned his compensation when he obtains a value that should satisfy a reasonable man. If one has a commodity which he wishes to sell, his chief concern is as to the price it brings. If the commodity has a market value, that value can be approximately fixed, and a price obtained substantially in excess of the market price should be held satisfactory. To express dissatisfaction with such a price is capricious.

This view was taken by the supreme court of Missouri in a case where the agent was to be paid a commission for obtaining a satisfactory lease. It was held that the landlord could not arbitrarily refuse to accept the lease negotiated. *Mullally* v. *Greenwood,* 127 Mo., 138, 29 S. W., 1001, 48 Am. St. Rep., 613.

We are of opinion, therefore, that this farm brought a price in excess of its value with which the defendants ought, as reasonable men, to have been satisfied, and that the complainants earned their stipulated commission.

It is next urged that complainants should not be allowed to recover because their employee, the auctioneer, was permitted or instructed to bid for them at the sale.

The general rule is that an auctioneer will not be allowed to buy or bid on property offered by him for sale. 6 C. J., 834; 2 R. C. L., 1127. This is but an application of the rule

that an agent will not be permitted to put himself in a position where his interests are inimical to those of his principal. This doctrine was stated years ago by Judge CARUTHERS in language that has been quoted in text-books and other decisions so frequently that its origin has been lost sight of, even by the profession of this State. We, therefore reproduce the language of the learned judge as follows:

"It is one of the canons of a court of equity, that one who undertakes to act for others, cannot in the same matter act for himself. Where confidence is reposed, duties and obligations arise which equity will enforce. A trustee cannot throw off the trust at pleasure, to the injury of the *cestui que trust*. He will not be allowed to mix up his own interests and affairs with those of the beneficiary. This doctrine has its foundation not so much in the commission of actual fraud, but in that profound knowledge of the human heart, which dictated that hallowed petition, 'Lead us not into temptation, but deliver us from evil,' and that caused the announcement of the infallible truth, that 'a man cannot serve two masters.' The right to sell, and to buy, cannot exist in the same person, because of the antagonistic interest in the two positions. Hence the fairness or unfairness of the transaction, and the comparison of price and value, or the existence or absence of actual fraud, are not permitted to enter into the consideration of the court. It is enough that the relation of trustee, and *cestui que trust,* existed. This appearing, the investigation is at an end, and the doctrine applies with all its force. It is certainly too late in the day to require the citation of authorities to establish this doctrine. But they may be found collected (609) in the cases of *Keech* v. *Sandford,* 47 to 58,

146 Tenn.—3

and *Fox and Pitt* v. *Mackreth,* 105 to 146, 1 White & Tudor's Leading Cases, In Equity, as to the two aspects in which we have discussed this case." *Tisdale* v. *Tisdale,* 34 Tenn. (2 Sneed.), 596, 608, 64 Am. Dec., 775.

As heretofore stated, this farm was sold in parcels. There was one tract of thirty acres; the same being an island, in Cocke county. There was little bidding on the island when it was offered, and, acting under instructions from one of the complainants, the auctioneer bid up to $130 an acre on this land for said complainants. The land was not knocked off on this bid, however. The auctioneer announced that the land was worth more than $130 an acree, and the sale was adjourned for lunch. After lunch the island was blocked with other land in Cocke county, and the whole sold to a third party on an unquestioned bid.

The complainant did not, therefore, get the island. One of them said that he thought the island was worth $150 an acre, and he was willing to take it at $130. It is evident from the testimony of complainants, however, that the bid was not made on this tract of land with any real desire of acquiring it. The bidding was done to boost the price of the tract and to boost the aggregate price of the whole farm. Complainants got no commission unless they effected a satisfactory sale. Any possible profit they might have made on the purchase of the thirty acres would have been a trifle compared with their commission for a satisfactory sale of the entire farm. So we believe that in bidding on this island complainants were merely trying to make the farm bring a better price, and were not taking a position where there was any conflict between their interests and the interests of defendants. The reason of the rule relied on by defendants accordingly fails in this case, and the

Robeson & Weaver v. Ramsey.

rule should not be applied to charge complainants with fraud in law. There can be no charge of fraud in fact, since they were acting in good faith and in the defendants' behoof.

It is finally said that complainants cannot recover because they did not bind the purchasers at this auction by memoranda sufficient to charge them under the statute of frauds. The weight of the proof on this question is to the contrary. Moreover this is not a case where the purchaser has made default, and *Gilchrist v. Martin & Clarke,* 86 Tenn., 583, 8 S. W., 572, and such cases are not in point. Until the purchaser procured by the agent refuses to comply, the owner has no excuse for saying that the agent has been remiss in not procuring a sufficient memorandum to charge such purchaser.

Some other questions are made which we have considered, but do not think they require discussion. We find no error in the decree of the chancellor, and it will be affirmed.