Tennessee & Southeastern Coal Co. *v.* Schwitzer-Cummins Co.

(*Knoxville,* September Term, 1938.)

Opinion filed November 25, 1938.

Lee, Cox & Hier and Kennerly & Key, all of Knoxville, for appellant.

Jennings & O'Neil, of Knoxville, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

As it reaches us, this is a suit by a sales agent against a manufacturer for breach of a contract under which the former handled the product of the latter. There was a decree for the complainant in the chancery court, affirmed by the Court of Appeals, and we have granted a petition for *certiorari*.

The defendant makes an automatic coal feeding device, or stoker, for furnaces known as "Stokol." Prior to October 17, 1933, and some time thereafter, defendant had a contract with a concern known as United Stoker Corporation, whereby Stoker Corporation sold and distributed defendant's entire output of these devices. On the date mentioned, complainant entered into a written contract with Stoker Corporation whereby complainant was to have exclusive rights to sell and distribute Stokols in the State of Tennessee, on terms stipulated, for a period of ten years. As consideration, complainant paid to Stoker Corporation $1,000 for the contract. To retain its agency, complainant was required to sell and distribute a minimum of one hundred Stokols per year in its territory.

The contract between complainant and Stoker Corporation was preceded by negotiations between Williams, an employee of that Corporation, and representatives of complainant, had in Knoxville. Following these nego-

tiations, Jenkins, one of complainant's officers, went to LaFayette, Indiana, headquarters of Stoker Corporation. The defendant Corporation was located at Indianapolis.

It seems that officers of complainant were somewhat dubious about the ability of Stoker Corporation to furnish Stokols in sufficient quantities, and were somewhat dubious about Stoker Corporation's financial responsibility. Before agreeing to undertake distribution of these devices, complainant's officers inquired of the representative of Stoker Corporation whether, in the the event Stoker Corporation could not live up to the proposed contract, defendant Corporation, the manufacturer, could be counted on to supply Stokols to fill orders complainant secured. To determine this question and to close up the contract, if one was made, Jenkins, an officer of complainant, went with Williams, as mentioned above, to LaFayette, Indiana.

On the way to LaFayette, the parties stopped at Indianapolis, and Williams interviewed Schwitzer, president of the defendant. Jenkins did not see Schwitzer on the way to LaFayette, but Williams reported to Jenkins that Schwitzer agreed that the manufacturer would supply complainant's trade with these devices if Stoker Corporation "passed out of the picture." Upon this assurance from Williams, Jenkins proceeded with Williams to LaFayette, Indiana, and there executed the formal contract by which complainant was given and undertook an exclusive agency for the sale of these devices in Tennessee on terms heretofore mentioned. The sum of $1,000 seems to have been paid to Stoker Corporation at LaFayette.

After this contract was signed, Jenkins came back to Indianapolis and called on Schwitzer. Jenkins exhibited

his contract with Stoker Corporation to Schwitzer and told Schwitzer that he (Jenkins) would not have entered into such contract except for Schwitzer's assurance through Williams that Schwitzer's company would undertake to see that the contract was carried out if Stoker Corporation defaulted therein. Jenkins testified that Schwitzer confirmed Williams' report; that he (Jenkins) then asked for written confirmation, which Schwitzer agreed to give him later. The day of this interview seems to have been a holiday and Schwitzer's stenographer was not available.

A few days later, a letter was addressed by Schwitzer, president of the defendant, to Mr. John L. Boyd, president of complainant, as follows:

"Dear Mr. Boyd: Mr. Jenkins and Mr. Williams visited the writer last week regarding your taking over the distribution for the entire state of Tennessee. I believe this is a very good move, and I believe each state should be handled by one distributor who appoints his own dealers. This way closer contact can be kept up with the dealers organization and better results obtained.

"We can assure you that we will cooperate with you to the fullest extent, give you all the help we possibly can give you, and that we will be at your service. I believe that you should make a very good showing in sales and that this distributorship will be profitable to you. So far as the contract is concerned which you made with the United Stoker Corporation, we can assure you that in case they should pass out of the picture at any time, that we will be glad to continue this contract direct with you, contributing our part as long as you do your part in establishing sufficient sales to make it profitable for both of us.

"We intend to build the best stoker in the United States and give the best of service.

"Please let us know whenever we can be of any assistance to you whatsoever."

Thereupon the complainant undertook the distribution and sale of Stokols in Tennessee, directly and through various agents.

In March, 1934, the complainant was notified by defendant that it had severed relations with Stoker Corporation and that defendant had taken "direct and full charge of the distribution of Stokols." The communication advised complainant "You now represent Schweitzer-Cummins Stoker Company of Indianapolis." After this notice, complainant continued the distribution of the devices, just as it had done before the change, handling transactions in the same manner, and receiving the same discount from defendant that it had received from Stoker Corporation.

Two controversies appear to have arisen between complainant and defendant concerning certain defective installations at Nashville and at Johnson City, by which defendant was put to some expense. The lower courts, however, have acquitted complainant of culpability in respect to these two matters. Complainant's representation of defendant, so far as the record shows, did not call forth any criticism from defendant except in the two particulars mentioned. On the contrary, the complainant exhibits complimentary expressions from defendant as to the complainant's activities in defendant's behalf.

Thus things went along until November 27, 1934, when complainant was notified by defendant that it would "not sell or ship to you or through you to your and our dealers in the State of Tennessee any more stokers, except

such as may have been ordered prior to your receipt of this notice for the following reasons:

"Your contract for the sale of stokers in Tennessee dated October 17th, 1933, is with United Stoker Corporation. Since United Stoker Corporation quit operations, we have been selling you stokers for the prices set out in that contract, not because we have felt bound to do so, but hoping you would diligently promote the sales and welfare of the stokers in Tennessee, appoint Dealers, and make at least reasonable efforts to sell direct in territory not covered by Dealers, as you agreed to do in such contract.

"This you have utterly failed to do. There are over sixty counties in the State without Dealers and in which you have made no reasonable effort to procure Dealers, and in none of this territory have you made any reasonable effort to sell stokers direct.

"In addition to the above, you have failed to provide yourself with a sufficient and adequate supply of repair parts to be able to give proper service to your Dealers and their customers. You also have failed to provide yourself with proper representation to represent and promote the welfare of Stokol, particularly so far as installation, engineering, and general instruction is concerned, for your Dealers.

"Insofar as we may be bound by said contract or any part thereof, we hereby cancel it for the reason that you have failed to perform the covenants therein on your part to be performed, as above stated."

Shortly after the receipt of this letter complainant filed its bill, which set out its contract with Stoker Corporation. and the consideration therefor, alleged the assumption of such contract by defendant, further alleged faithful

compliance by complainant, that it had met its quota, etc., and the bill sought specific performance of the contract or damages for its breach.

Answer was filed by defendant denying that any contract existed between it and the complainant, denying that it had assumed any contract obligation to complainant, and further saying that if held bound on complainant's contract, originally made with Stoker Corporation, defendant was released from any obligations thereunder by reason of complainant's default in the particulars stated in the registered letter above quoted constituting a breach of said contract by complainant itself.

Quite a volume of proof was taken. The chancellor found that complainant had complied with the contract in the several particulars in which it was charged with default, that complainant had met its sales quota and had furnished defendant no ground for cancellation.

The Court of Appeals specifically concurred in most of these detailed findings and generally concurred in all the chancellor's findings of facts. At least there was no divergence in the finding of facts by the Court of Appeals from the finding of facts by the chancellor. A contradiction between the two courts is necessary for a review of the facts in this court. *Miller* v. *Kendrick*, 153 Tenn., 596, 285 S. W., 51.

We think it clear that defendant became bound on this contract between complainant and Stoker Corporation, except as the obligation may have been modified by defendant's letter to Mr. Boyd, heretofore set out. Complainant would not have entered into the contract with Stoker Corporation except for defendant's assurance that it would be glad to continue the contract if Stoker Corporation passed out of the picture.

While the $1,000 was paid and the contract signed before Jenkins actually saw Schwitzer and before the letter to Boyd was written, the incidents were practically contemporaneous. At least Jenkins' interview with Schwitzer in Indianapolis and Schwitzer's promise of a written confirmation came immediately upon Jenkins' return from LaFayette. If Schwitzer had not at that time confirmed Williams' report as to the manufacturer's attitude toward the contract, complainant could have rescinded the contract and recovered its $1,000, or if the $1,000 had been paid by check, could have stopped payment on that check.

Indeed, in this court, the principal argument for defendant is on the idea that it took over Stoker Corporation's contract with complainant, but took the contract over on conditions set out in the quoted letter, namely, that defendant would continue the contract direct, ''contributing our part as long as you do your part in establishing sufficient sales to make it profitable for both of us.''

The contention is that this case falls under a line of authorities referred to as the ''satisfaction cases.'' These cases rule, as applicable to a sales agent, that if he contracts to perform to his principal's satisfaction, the contract can be canceled by the principal at will, and that the decision of the principal is final unless bad faith is shown. These cases are collected in an extensive note, 32 A. L. R., 209, and kindred cases follow in notes, 52 A. L. R., 546, and 89 A. L. R., 252. Defendant insists that it had a right to say whether this contract was profitable and that its decision was conclusive of the matter.

The case before us differs from some of those just

above referred to in that the contract here was for a fixed term and furthermore was supported by an independent consideration of $1,000 paid by the agent. Moreover, this court has been far from invariable acceptance of the idea that when a contract is to be performed to the satisfaction of a party thereto such party has an absolute right to pass on the character of the performance. The court has recognized such right when feelings, taste or sensibilities were involved, as in the making of a costume or the painting of a portrait. Where the question, however, was one of mere value, we have inclined to the opinion that a performance satisfactory to a reasonable man would be sufficient. *Robeson & Weaver* v. *Ramsey,* 147 Tenn., 25, 245 S. W., 413; *Ragsdale* v. *Dyer,* 150 Tenn., 496, 266 S. W., 91.

In *Robeson & Weaver* v. *Ramsey, supra,* we said [page 32]: "The courts always seek to gather the intention of the parties, and many cases are influenced by some indication of that intention other than the bare use of the term under notice."

By complainant's contract it was required to sell one hundred Stokols each year. If its sales fell short, its contract was terminable. If it did sell one hundred Stokols each year and otherwise comply with its contract, the contract continued. As we have pointed out, the lower courts found that complainant complied with its contract in all material respects.

While the sale of one hundred Stokols in Tennessee might not have come up to the hopes or desires of the manufacturer, the mere fixing of this quota in this connection evidenced that its attainment would be regarded at least as satisfactory performance by the agent

of his contract. Otherwise, what could be the object of fixing a sales quota?

That complainant was working under a sales quota contract was distinctly recognized by defendant in its correspondence with complainant about the Bondurant subagency, established by agreement of the parties. In this correspondent defendant advised complainant in the very words that Bondurant's sales would be credited on complainant's quota.

Furthermore, the defendant seems to misinterpret the letter of confirmation. Defendant did not say in that letter that it would continue this contract "as long as you establish sufficient sales to make it (the business) profitable for both of us." Defendant said it would continue the contract "as long as you do your part in establishing sufficient sales to make it (the business) profitable for both of us."

If the complainant complied with the terms of the written contract, as the lower courts have found that it did, and if complainant met its sales quota, can it be said that complainant did not do its part?

■ Objection is made to the exclusion by the chancellor of certain evidence offered by defendant below tending to show that defendant did not derive a profit from the business done for it in Tennessee through complainant. The exclusion of this evidence does not seem material. It mostly relates to manufacturing costs and like figures. Also expenses incident to defective installations at Nashville and Johnson City heretofore referred to are brought out. For these, however, we have seen that the lower courts held complainant not responsible. The excluded testimony, except about the two matters in which complainant was acquitted of blame, does not

throw any light on the question as to whether or not complainant did its part.

The measure of damages allowed by the courts below was according to stipulation. It was agreed that in the event complainant was successful in the suit, its damages should be "the commissions on all Stokols sold by either party pending a decision in said lawsuit, according to the terms of the contract involved less, however, such sum of One Hundred ($100.00) Dollars per new dealer as next hereinabove described."

The only controversy arising here is whether the complainant is entitled to recover the commissions accruing pending appeal. It was agreed that sales would be continued by both parties during the litigation and commissions on sales by each paid into court. If successful, plaintiff was to recover commissions on all sales "pending a decision in said law suit." Naturally construed, this means a final decision. Defendant could have accepted the decree of the chancellor, in which event that decree would have been a final decision. But defendant appealed and thereby of its own accord postponed decision.

For the reasons stated, the judgment of the Court of Appeals is affirmed.