## D. W. WINKELMAN CO., Inc., et al. v. BARR.

No. 10890.

United States Court of Appeals Sixth Circuit.

Dec. 14, 1949.

342

Clyde W. Key, Knoxville, Tenn. (Clyde W. Key, Knoxville, Tenn., on the brief), for appellant D. W. Winkelman Co., Inc.

Edward Kuhn, Memphis, Tenn. (George S. Miles, Memphis, Tenn., on the brief; McDonald, McDonald & Kuhn, Memphis, Tenn., of counsel), for appellee.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of an action based upon a contract for the laying of sewers, mains and service lines in Oak Ridge, Tennessee, which was part of the wartime construction for atomic bomb development. Appellee was sub-contractor under appellant's principal contract, and an arrangement was entered into on February 3, 1944, under which appellee secured labor and equipment, brought it a considerable distance to Oak Ridge and constructed main line sewers and house connections. The superintendent of inspectors in charge certified that the appellee completed his work in a very workmanlike manner. On March 31, 1944, appellant terminated the contract upon the ground that the Government had cancelled a substantial part of the work assigned to appellee. Appellant itself later completed the work. This litigation ensued and resulted in a judgment allowing appellee recovery of $323.18 for work done, and

$5,347.62 as prospective profits. The item of $323.18 is not contested here, and the appeal is prosecuted from the portion of the decree allowing recovery of prospective profits.

Appellant contends that the contract was not enforceable as an executory contract and that the record contains no competent evidence as to the amount of appellee's damages. It is contended that the contract is so vague, indefinite and uncertain as to be wholly unenforceable, and that the provision that the agreement may be terminated by either party on five days' notice if it proves unsatisfactory renders the agreement a contract at will and destroys its mutuality.

The District Court made careful and detailed findings of fact which are amply sustained by the record, and its conclusions of law are correct. As rightly held, the contract was not, as appellant maintains, embodied in the letter dated February 3, 1944.[1] This letter was written without previous negotiation or consultation with appellee, by appellant's vice president, and handed to appellee as a memorandum of the arrangement. It was not signed by appellee and it shows on its face that it was not intended to be the whole contract. It referred to plans, special conditions and specifications set up in the principal contract, and evidently contemplated future oral agreements. While the extent of the work was not certain at the time the letter was delivered, this indefiniteness, as held by the District Court, was remedied about February 19, 1944, when appellee was furnished a map showing the work planned, together with block plan blueprints. Various other blue prints were supplied to appellee throughout the

[1] "It is agreed that D. W. Winkelman Co., Inc. will sub-contract to J. H. Barr Construction Company, certain portions of sewer mains and services lying in the West Village of Clinton Engineer Works. We agree to pay for the various items done at 10% less than our unit prices, to pay payrolls, and charge various items such as gas, oil and minor repairs to the Barr Construction Company's contract. These charges to be deducted from monthly payments, which will be made 5 days after our estimates are received from the owner. All work done under this sub-contract will be governed by the plans, specifications and special conditions set up in our contract No. W-7415-eng-18, with the owner.

"Barr Construction Company agrees to bring in one (1) backhoe and one (1) trench machine and other incidental tools necessary to carry on their work in a workman-like manner. Also to furnish an adequate amount of labor for their own operations.

"This agreement may be terminated by either party on five days notice if it proves unsatisfactory."

month. Definite portions of the work were allotted to appellee to be done within a specific area. As shown by the map and a yellow sheet entitled "Sequence of Sewer Operation to Barr Constr. Co.," appellee was assigned approximately 14,525 feet of main line sewer. The Government stop order of April 1, 1944, relied upon by appellant as being the cause for cancellation of appellee's contract, included no part of appellee's unfinished work as listed on the yellow sheet. When the contract was terminated appellee was working within the area defined by the yellow sheet, having laid 10,411 feet. Thus appellee was deprived of laying 4,114 feet of main line sewer and a corresponding number of house connections.

■■■ The contract was sufficiently definite as to the work allotted to appellee. Also there had been substantial performance by appellee. Cf. Frierson v. International Agricultural Corp., 24 Tenn.App. 616, 148 S.W.2d 27. It is urged, however, that the statement in the letter that the contract "may be terminated by either party on five days notice if it proves unsatisfactory" makes the contract unenforceable as being terminable at will. Appellant cites certain decisions from federal courts and various states as authority for the proposition that when a contract contains such a phrase a party thereto has the absolute right to determine for himself whether the work as done effected a satisfactory result. We do not discuss these so-called "satisfaction" cases, for in general they construe selling or agency contracts dependent upon their peculiar facts, and not in point here. This contract was made in Tennessee, to be performed within that state, and is governed by the law of Tennessee. The cases cited from that jurisdiction, so far from requiring reversal, support the decision of the District Court. In Tennessee the courts follow the general rule that where a contract involves feelings, taste, or sensibilities and provides that a price bid in a sale must be satisfactory the buyer has an absolute right to determine for himself whether the article furnished or work done is satisfactory. But where the contract involves operative fitness or mechanical utility, performance is held to be sufficient if it reasonably ought to satisfy a reasonable man. Robeson & Weaver v. Ramsey, 147 Tenn. 25, 32, 245 S.W. 413; Tennessee & Southeastern Coal Co. v. Schwitzer-Cummins Co., 173 Tenn. 524, 533, 121 S.W.2d 553.

In Peck-Williamson Heating & Ventilating Co. v. McKnight & Merz, 140 Tenn. 563, 205 S.W. 419, 423, strongly relied on by appellant, the court stated: "There is a conflict in the authorities as to the meaning of the term 'satisfactory,' so used in a contract. It is held, perhaps by the weight of authority, that, where such term appears in the contract, the party in whose favor it was reserved has the absolute right to determine the question, and to act accordingly—that is, either accepting or rejecting the work, provided his act is not merely capricious. Other authorities hold that such term is fully met where the work, as done, should be satisfactory to a reasonable man. Without now deciding between these two views, it is sufficient to say that this particular term was not lightly used in the contract. It was made the subject of correspondence between the parties. Complainant was very loath to use it, saying it had had so much trouble with agreements in which this word appeared that it had ceased to admit such term into its contracts. Williamson insisted, and would sign no other; thereupon the complainant yielded. So we think the parties must have understood that Williamson was to have the absolute right to determine for himself whether the work as done effected a result satisfactory to himself."

■■■ It could hardly be contended on the facts of this record that the cited case controls here, nor that the drastic construction urged by appellant was within the contemplation of the parties when the contract was made. This record does not reveal that there was any discussion at that time or later as to the meaning of the somewhat vague cancellation clause. The circumstances surrounding the arrangement, which involved wartime contracts with the Government, indicate that the phrase was inserted mainly in order to protect the principal contractor in case the Government should cancel its contracts. But if appel-

lant, whose vice president inserted this phrase in the letter, intended the cancellation clause to ensure satisfactory performance, the proper test would seem to be as declared in Ragsdale v. Byer, 150 Tenn. 496, 513, 266 S.W. 91, whether the performance would be acceptable or satisfactory to a reasonable man. In Tennessee & Southeastern Coal Co. v. Schwitzer-Cummins Co., supra, the court, in passing upon a contention similar to that advanced herein, that a contract of this kind can be cancelled by the principal at will, declared [173 Tenn. 524, 121 S.W.2d 556] "this court has been far from invariable acceptance of the idea that when a contract is to be performed to the satisfaction of a party thereto such party has an absolute right to pass on the character of the performance. * * * Where the question * * * was one of mere value, we have inclined to the opinion that a performance satisfactory to a reasonable man would be sufficient." It was shown in that case that the contract had been reasonably performed and it was held that the contract continued and the manufacturer was not entitled to cancel it.

While appellant's answer herein set up that appellee did not perform the work in a satisfactory manner, at the trial appellant's agent refused to testify that the contract was terminated for that reason, and the positive evidence of the inspectors in charge was distinctly to the contrary. The defense on this point was not sustained.

Moreover, in Robeson & Weaver v. Ramsey, supra, the court held that certain bids were rejected because of bad faith, and that under a provision that the owner of a farm should have the right to reject bids unless they were satisfactory, the one to be satisfied must act in good faith. Here the District Court found, and the record clearly shows, that appellant did not act in good faith.

We conclude that the District Court correctly held that the contract was enforceable, and breached by appellant. The findings as to damages are carefully worked out and based upon positive testimony.

The judgment is affirmed.