NBC CAPITAL MARKETS GROUP, INC., Plaintiff–Appellant,

v.

FIRST BANK, Defendant–Appellee.

No. 00–5276.

United States Court of Appeals, Sixth Circuit.

Jan. 8, 2002.

Before KENNEDY and DAUGHTREY, Circuit Judges; MCKEAGUE,* District Judge.

MCKEAGUE, District Judge.

This case presents claims for breach of contract under Tennessee law. The district court awarded summary judgment to defendant. This appeal followed, appellant contending that the district court improperly decided disputed issues of fact.

## I. FACTUAL BACKGROUND

Plaintiff-appellant NBC Capital Markets Group, Inc. ("NBC") is a Tennessee corporation. Defendant-appellee First Bank is a Missouri corporation. In April 1997, a representative of NBC first approached First Bank to explore First Bank's interest in selling its $170 million consumer receivable (automobile and boat loans) portfolio. The parties entered into an agreement on April 25, 1997, memorial-

ized in their "Letter of Understanding." Under the agreement, First Bank agreed to sell the consumer receivable portfolio subject to certain conditions; NBC agreed to assist First Bank in evaluating and selling the portfolio; First Bank conferred upon NBC the exclusive right to market the portfolio for 120 days; and both parties agreed "to use their best efforts to accomplish the transactions contemplated by this letter agreement" and acknowledged their mutual desire to complete the sale by June 30, 1997. The agreement provided that NBC "may receive a fee or other compensation from Buyer, Seller or otherwise." In consideration, First Bank expressly agreed not to circumvent NBC's marketing efforts or otherwise attempt to sell the portfolio for a period of two years.

On July 30, 1997, the parties executed an "Amendment to the Letter of Understanding." The amendment extended NBC's exclusive right to market the portfolio "until the later of the transfer of the servicing or October 31, 1997." The amendment also clarified First Bank's commitment to pay NBC a fee "equal to .375% of the outstanding principal balance of that portion of the portfolio actually sold." The fee was payable, however, "only in the event that at least one bid is acceptable AND that the transaction actually closes." (Emphasis in original.)

Also, on or about July 30, 1997, NBC submitted various bids to First Bank for consideration. One bid, from Guaranty Federal Savings Bank ("Guaranty"), offered the highest price, $114,345,696, for the largest portion of the portfolio. The bid offering was expressly made subject to, among other conditions, an "acceptable Purchase and Sale Agreement" and "approval by Guaranty at its sole discretion."

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

Although the bid offering was not signed by a representative of Guaranty, Mark Turkcan, Executive Vice President of First Bank, signed in acceptance on July 30, 1997, with one requested change. Later that date, Guaranty approved the requested change. Upon further consideration, however, First Bank, on July 31st, communicated its withdrawal or revocation of acceptance, having determined the sale would not be profitable after all.

NBC's efforts to salvage the transaction were rebuffed by First Bank. No sale of the consumer receivable portfolio was consummated. Because the transaction did not close, NBC received no fee for its services. On November 12, 1997, NBC commenced this action, alleging First Bank had breached its contractual duty to use its "best efforts" to consummate the sale. The complaint also alleges that First Bank breached its implied contractual duty of good faith and fair dealing. NBC sought recovery of $428,796, the marketing fee it would have been entitled to had the sale to Guaranty closed.

First Bank defended by maintaining that it had satisfied its best efforts obligation by seriously considering Guaranty's bid offering. The district court ultimately awarded summary judgment to First Bank, holding there was no genuine issue of material fact and that First Bank's promise to use its best efforts did not obligate it to engage in an unprofitable transaction. To the extent NBC had asserted a promissory estoppel theory of relief, the district court held NBC had failed to adduce evidence of a promise sufficiently definite to justify reasonable reliance. The district court's opinion is silent as to the claim for breach of implied duty of good faith and fair dealing.

On appeal, NBC contends the district court erred by improperly weighing the evidence and failing to draw all reasonable inferences in favor of the non-movant. NBC insists there are genuine issues of material fact for trial.[1]

## II. STANDARD OF REVIEW

We review the district court's award of summary judgment *de novo*. *Cook v. Little Caesar Enterprises, Inc.*, 210 F.3d 653, 655 (6th Cir.2000); *Stalbosky v. Belew*, 205 F.3d 890, 893 (6th Cir.2000).

Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. .... In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party ..... The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." .... A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." ....

*Stalbosky*, 205 F.3d at 893 (citations omitted).

## III. ANALYSIS

### A. Breach of Contract

■ First Bank argues the "best efforts" clause is so ambiguous as to be unenforceable. Yet, applying Tennessee law, which undisputedly applies to the construction and enforcement of this contract, this Court has enforced the contractual "best efforts" promise. *See Davidson &*

---

1. NBC has not objected to the district court's non-treatment of its claim for breach of implied duty of good faith and fair dealing and has ostensibly abandoned the claim. We, therefore, like the district court, give it no consideration. *See Robinson v. Jones,* 142 F.3d 905, 906 (6th Cir.1998) (issues not raised on appeal are considered abandoned).

*Jones Dev. Co. v. Elmore Dev. Co., Inc.,* 921 F.2d 1343, 1350–51 (6th Cir.1991). The *Davidson* court likened the promise to use one's best efforts to the implied duty of good faith and fair dealing imposed on each party to a contract under Tennessee law. *Id.* The specific contours of this duty depend on the terms of the agreement and the intention of the parties. *ACG, Inc. v. Southeast Elevator, Inc.,* 912 S.W.2d 163, 168 (Tenn.App.1995). Generally, it requires a party to "make a reasonable effort" and "exercise reasonable diligence." *Davidson,* at 1351. Such reasonableness determinations pose questions of fact which defy summary judgment if there is a dispute. *Id.* at 1350, citing *Educational Placement Service, Inc. v. Watts,* 789 S.W.2d 902, 904–05 (Tenn.App.1989).

The district court nonetheless concluded that summary judgment was appropriate in this case. Can it be said as a matter of law, based on the present record, that First Bank satisfied its best efforts obligation? Stated another way, has NBC adduced no more than a mere scintilla of evidence in support of a finding that First Bank failed to use its best efforts?

The district court correctly observed that First Bank had, under the terms of the parties' agreement, impliedly reserved the prerogative to find any and all bids unacceptable. In light of this, the district court construed the best efforts clause as obligating First Bank only to "duly and sincerely consider Guaranty's bid offering." This duty was fulfilled, the district court concluded, when First Bank initially accepted the bid and then withdrew its acceptance only after determining that the transaction would be unprofitable. The district court observed that "[n]o reasonable observer with expertise in the banking field would find that a party's best efforts require it to engage in an unprofitable transaction." Slip opinion, p. 16.

Yet, as NBC argues, this reasoning begs the question whether the transaction would in fact have been unprofitable for First Bank. If the best efforts clause is to have any meaning at all, it must, at a minimum, mean that First Bank was not free to reject a facially acceptable bid based on mere whim or fancy. Inasmuch as First Bank had expressly agreed to use its best efforts to consummate the sale of its portfolio, NBC was entitled to expect, as it used its best efforts to market the portfolio, that First Bank would not reject a facially acceptable bid on other than objectively reasonable grounds. Any other construction of the best efforts clause would be inconsistent with First Bank's obligation to "make reasonable efforts" and "exercise reasonable diligence."

Pertinent in this regard is the distinction recognized in *Davidson,* with reference to Tennessee law, between two different kinds of "satisfaction contracts." In one kind, where a party's performance is conditioned upon its satisfaction concerning a matter of feelings, taste or subjective sensibilities, the party has an absolute, unfettered right to find the condition precedent satisfied or not. *Davidson,* 921 F.2d at 1353–54, citing *Tennessee & Southeastern Coal Co. v. Schwitzer–Cummins Co.,* 173 Tenn. 524, 121 S.W.2d 553 (Tenn. 1938). Where the condition precedent is a matter of "mere value," however, the party's satisfaction is assessed under an objective reasonableness standard. *Id.*

Here, the bid offering involved a matter of mere value. It follows that First Bank's best efforts obligation required it not merely to "duly and sincerely consider" Guaranty's bid offering, but to assess the merits of the bid offering under an objective standard. Assessing the merits of Guaranty's bid offering objectively, NBC maintains, yields questions of material fact that cannot be resolved on the present

record. That the bid offering was facially acceptable is demonstrated by First Bank's initial acceptance.[2] In addition, NBC argues, First Bank's given reason for revoking its acceptance is neither compelling nor even persuasive.

It appears that during this 24–hour period between acceptance and revocation, representatives of First Bank became aware that sale of the portfolio would require First Bank to write-off $2.5 million in unearned dealer reserves. As a consequence, it was determined that acceptance of the Guaranty bid would result in a $550,000 loss to First Bank. This accounting aspect of the transaction had eluded Mark Turkcan when he initially accepted Guaranty's bid offering. Upon learning of it, he promptly directed that First Bank's revocation of acceptance be communicated to NBC and Guaranty.

NBC does not dispute that the dealer reserves write-off is a necessary feature of the transaction. NBC questions, however, the legitimacy of this justification for First Bank's revocation, insisting that First Bank either knew or should have known of

it before initial acceptance of Guaranty's bid. More importantly, NBC also challenges First Bank's calculation of the significance of the write-off, as well as its utter refusal to engage in further discussions and negotiations.[3]

On behalf of NBC, Vice President Edward M. Land attempted to persuade First Bank Vice President Alan Meyer that First Bank was failing to properly account in its revised calculations for "dealer rebates." Land valued the rebates at "up to $1 million," and contended that proper accounting of them would have significantly reduced or eliminated First Bank's perceived loss. Land aff. p. 10, J.A. 148. Land believed that Meyer did not understand his suggestion, so he asked to speak with First Bank's ultimate decision maker, Mark Turkcan.[4] Land dep. pp. 65–66, J.A. 532. Despite repeated requests, Land was not afforded the opportunity to speak with Turkcan. *Id.* Instead, Land asserts that First Bank steadfastly refused to cooperate with any efforts to salvage the transaction. Land aff. pp. 8–9, J.A. 147–48; Land dep. p. 55, J.A. 531.

**2.** Further substantiating the facial acceptability of the Guaranty bid offering, NBC contends, is the affidavit of Edward M. Land, NBC's vice president, attesting to verbal assurances he had received from Alan Meyer and Mark Turkcan on behalf of First Bank to the effect that, in terms of purchase price, First Bank was willing to accept "par or something slightly less than par" for the portfolio. Land aff. pp. 2–3, J.A. 140–41. The Guaranty bid included a purchase price slightly greater than par, 100.97%, and was therefore "in the ballpark."

First Bank contends Land's affidavit is not admissible because it contradicts both the parties' written agreement and Land's prior deposition testimony. We disagree. Land's affidavit is not contradictory of either the agreement or his deposition testimony, but is legitimately explanatory and is properly considered in ascertaining the intention of the parties. However, Land's affidavit has little probative value in this context, because evi-

dence of First Bank's oral representations concerning an acceptable price is merely cumulative of other superior evidence of the facial acceptability of the bid, i.e., First Bank's initial acceptance of Guaranty's bid.

**3.** NBC further contends that First Bank had no right to revoke because communication of its initial acceptance had resulted in the formation of a binding contract with Guaranty. Guaranty is not a party to this action and has not asserted any such contract rights. Nor has NBC asserted a claim as third party beneficiary of any contract between Guaranty and First Bank. Thus, the argument is not properly before the Court. Moreover, the analysis that follows makes it unnecessary to determine whether a contract existed between Guaranty and First Bank.

**4.** Meyer admitted that he had no prior experience in transactions of this type. Meyer dep. p. 18, J.A. 585.

When Land finally heard from Turkcan by telephone several weeks later, Turkcan indicated that First Bank did not intend to negotiate further and suggested that NBC "sue us." *Id.*

In response, First Bank confirms that its desire to avoid a loss was the sole reason for revocation of its acceptance. Turkcan dep. p. 36, J.A. 626. This evidence stands unrefuted. Turkcan also explained his revised calculations—made on "on a scratch piece of paper" during a telephone conversation—that revealed First Bank's anticipated net loss in the event the sale was consummated. Id., pp. 37–41, J.A. 627–31. He admitted that he did not verify the dealer reserve figures provided to him by telephone before withdrawing First Bank's acceptance of the Guaranty bid. *Id.* at p. 41, J.A. 631. He also admitted that after revoking acceptance, First Bank did nothing to salvage the transaction. *Id.* Turkcan found Land's only proposed solution, accounting for dealer rebates, not to be reasonable, and the matter was not pursued any further. *Id.* at p. 41–42, J.A. 631–32.

We agree with the district court's observation that under the terms of the parties' agreement, the best efforts clause does not require First Bank to enter into an unprofitable transaction. Indeed, it may ultimately be established that acceptance of Guaranty's bid would have resulted in a loss to First Bank. Careful review of the record, however, convinces us that the objective reasonableness of First Bank's assessment was not properly established as a matter of law at the time the district court granted summary judgment to First Bank.

Where First Bank, having once accepted Guaranty's bid, then revoked its acceptance 24 hours later based on unverified, undocumented calculations informally made during a telephone conversation, and then refused to entertain inquiries or further discussions, it cannot be said to have

been conclusively established that the transaction, viewed objectively, would have been unprofitable to First Bank. Moreover, First Bank's admitted refusal to make any efforts to salvage the transaction or even engage in further negotiations appears to be inconsistent with its contractual duty to make reasonable efforts and exercise reasonable diligence. *See Davidson,* 921 F.2d at 1352 ("When performance of a condition precedent depends upon a financing agreement, an inference of lack of diligence or good faith in the performance of conditions precedent arises when no attempt is made by the contracting party to seek an agreement that satisfies the condition."); *In re Cambridge Biotech Corp.,* 186 F.3d 1356, 1357 (Fed.Cir.1999)(undisputed failure to make real effort to satisfy condition precedent held to be breach of "best efforts" obligation).

At the very least, genuine issues of material fact are presented that render summary judgment on NBC's breach of contract claim inappropriate. It is not inconceivable, based on the present record, that a reasonable trier of fact could find for plaintiff NBC on its claim that First Bank breached the parties' agreement by failing to use its best efforts to consummate the proposed sale. The district court's contrary conclusion is in error and must be vacated.

**B. Promissory Estoppel**

██ NBC's complaint does not state a claim for promissory estoppel. It does, however, contain fact allegations which NBC contends make out such a theory of recovery. Construing the complaint liberally, the district court apparently assumed that a promissory estoppel claim had been asserted. It went on to grant summary judgment to First Bank, holding that NBC had not adduced evidence to

support a finding that First Bank had made an oral promise upon which NBC had *reasonably* relied to its detriment.

NBC's promissory estoppel theory of recovery is premised on oral representations allegedly made to Edward Land before the parties approved the "Letter of Understanding." In response to Land's inquiry concerning an acceptable selling price, both Alan Meyer and Mark Turkcan allegedly assured Land that First Bank would be willing to accept "par or something slightly less than par" for the portfolio loans. Land aff. pp. 2–3, J.A. 140–141. In reliance on these representations, NBC allegedly entered into the agreement with First Bank and undertook considerable efforts to market the portfolio. Because the Guaranty bid contains a purchase price slightly greater than par, NBC contends First Bank should be estopped from rejecting it. First Bank's position is that it advised NBC it was not willing to consider a bid with a proposed price less than par, but did not promise to accept any bid that included a price greater than par. Turkcan dep. pp. 31–32, J.A. 621–22.

"Where one makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and where such promise does in fact induce such action or forbearance, it is binding if injustice can be avoided only by enforcement of the promise." *EnGenius Entertainment, Inc. v. W.W. Herenton,* 971 S.W.2d 12, 19–20 (Tenn. App.1997), quoting *Foster & Creighton Co. v. Wilson Contracting Co.,* 579 S.W.2d 422, 427 (Tenn.App.1978). To be enforceable, the promise relied on must be unambiguous and not unenforceably vague. *Calabro v. Calabro,* 15 S.W.3d 873, 879 (Tenn.App. 1999). No injustice results from refusal to enforce a gratuitous promise where the promisee's reliance was unreasonable or unjustified. *Smith v. Harriman Utility Board,* 26 S.W.3d 879, 886 (Tenn.App. 2000).

Even assuming the truthfulness of NBC's characterization of the subject representations, we agree with the district court's assessment. The district court succinctly explained its analysis as follows:

Complex transactions such as the sale of First Bank's portfolio involve multiple factors, all of which are important in determining whether a bid is acceptable. Price is only one such factor. NBC has failed to submit evidence that First Bank promised to accept any bid containing a price of par or more regardless of the other terms of the bid. Therefore, NBC's promissory estoppel claim fails because it was unreasonable for NBC to rely on First Bank's statement that it would accept a price of par or more as a promise that First Bank would accept any bid containing that price regardless of the other terms of the bid.

Slip opinion p. 18. Consistent with the district court's reasoning, we hold that the alleged "promise" is not so definite and unambiguous as to *reasonably* justify NBC's purported understanding that First Bank had bound itself to accept any bid with a purchase price of par or greater. The unreasonableness of NBC's alleged reliance on the oral representations is underscored by the fact that the parties refrained from including any such promise in their Letter of Understanding.

We therefore conclude, as a matter of law, that enforcement of the alleged promise is not required to avoid injustice. To the extent that First Bank may have breached a duty owed to NBC, NBC has an appropriate remedy in contract, through enforcement of the best efforts clause. The district court did not err in awarding summary judgment to First Bank on NBC's promissory estoppel claim.

## IV. CONCLUSION

Accordingly, the judgment of the district court is **AFFIRMED** insofar as it awards judgment to First Bank on the promissory estoppel claim and is **VACATED** insofar as it awards judgment to First Bank on the breach of contract claim. The matter shall be **REMANDED** for further proceedings not inconsistent with this opinion.