A04A1053. THE TAP ROOM, INC. v. PEACHTREE-TSG
ASSOCIATES, LLC.
(606 SE2d 13)

SMITH, Chief Judge.

In this suit involving a commercial lease, Peachtree-TSG Associates, LLC brought suit against The Tap Room, Inc., its tenant, for unpaid rent and damage to the premises. Tap Room answered and counterclaimed, and the trial court granted partial summary judgment to Peachtree on Tap Room's counterclaims. Tap Room appeals that ruling, contending in separate enumerations of error that the trial court erred in granting summary judgment in favor of Peachtree on each count of its counterclaim. We find that the trial court's ruling was proper, and we affirm the judgment.

The record shows the following relevant facts: In April 1998, Tap Room and Peachtree Complex, L.P., entered into a lease agreement for premises located in Peachtree Center in Atlanta. Peachtree Complex later assigned all its rights in the lease to Peachtree-TSG Associates, LLC. The lease called for the payment of a fixed base rent, as well as charges for the use of common areas and other additional charges, including water usage. Various amendments to the lease were contemplated as a result of Tap Room's difficulties with the water coolant system, and an agreement was worked out to amend the lease. When the amendment was drafted and presented to Tap Room, however, it sought additional changes, and Peachtree elected not to modify the lease. Additionally, in June 2000, Peachtree discovered that because of an error in placing a decimal point it had been miscalculating Tap Room's water charges.

Eventually, Tap Room became interested in selling its business, and in March 2001 began negotiating with Joe Romano, the principal of another Peachtree tenant, for a sale and purchase of Tap Room's business. Terms of sale were worked out, and meetings were held between Peachtree's representative Nancy Dungan, Tap Room's principal Tony LaRocco, and Romano. Assignment of Tap Room's lease to Romano was discussed. A dispute existed regarding outstanding amounts Tap Room owed to Peachtree. Notwithstanding the dispute, by letter to Tap Room's counsel Peachtree agreed to an assignment of the lease, provided that Tap Room paid the outstanding amounts then due under the lease. When Tap Room failed and refused to pay the amount demanded, Peachtree refused to agree to the assignment, and this action ensued.

1. It is apparent that Tap Room contends, as it contended below, that the lease was, in fact, modified; that a letter from Dungan dated March 7, 2001 demanding the approximate sum of $27,000 as outstanding common area maintenance (CAM) and water charges constituted a binding agreement as to the amount owed; and that a letter

from Peachtree's attorney dated July 2, 2001 constituted unconditional permission to assign the lease. Tap Room's counterclaims rely on those contentions and on its assertions that Peachtree either unlawfully escalated the amount owed and "reneged" on its agreement to permit the lease assignment, or that it fraudulently misrepresented the amount owed. We do not agree with either contention, and we find no breach of any contract.

As outlined above, the record shows clearly that the lease was never modified or amended. Even Tap Room acknowledges that the proposed amendment was never signed. Further, it is clear from the record that although the March 7, 2001 letter from Dungan informed Tap Room that it owed CAM and water charges then totaling approximately $27,000, the letter also showed that Tap Room owed other amounts, including rent and additional charges for February and March, storage fees, and interest. Moreover, the closing for the sale of Tap Room's business was not scheduled to take place until several months after the date of the letter. It is therefore disingenuous for Tap Room to suggest that $27,000 was the final figure it owed Peachtree. Merely by the passage of time it would have owed significantly larger sums. By its express terms, therefore, the letter could not have constituted a binding agreement as to the amount owed by Tap Room.

Paragraph 17 (a) of the lease provides:

> This lease shall not be assigned, mortgaged, pledged, encumbered or in any other manner transferred by tenant or otherwise, voluntarily or involuntarily, by operation of law or otherwise, nor shall the premises or any part thereof be sublet, licensed, granted to a concessionaire or used or occupied by anyone other than tenant without first obtaining the written consent of the landlord.

Georgia courts have construed similar lease language requiring the landlord's consent to vest absolute control in the landlord with regard to an assignment. When the terms of the lease provide that written consent is necessary for assignment, the landlord's refusal to consent to such an assignment need not be reasonable. "[T]he reasonableness or unreasonableness of appellee's refusal to give [its] written consent is otherwise irrelevant to the legal effect of [its] failure to give such consent." *Vaswani v. Wohletz*, 196 Ga. App. 676, 677 (1) (396 SE2d 593) (1990). As pointed out above, Peachtree's agreement to Tap Room's assignment of the lease was conditioned upon the payment of all amounts owed, which were significantly higher than $27,000. Tap Room never paid these amounts; it simply abandoned the premises.

Furthermore, Peachtree's refusal to consent to the assignment was completely within its rights. In its July 2, 2001 letter, it gave notice that it "would consent to the proposed assignment, provided the past due amounts are paid" and that "[c]onsent will be withheld if the amounts due are not paid." Tap Room's failure to pay the amounts due resulted in a failure of the condition precedent to consent to the assignment.

Contrary to Tap Room's argument, questions of fact regarding the amount owed are irrelevant to the issue of whether Peachtree breached a contract, thereby damaging Tap Room. As pointed out by Peachtree, the lease did not require it to consent to assignment if the request was reasonable; it had the right to withhold its consent "for any reason or no reason." Nor was the amount due too indefinite to constitute a sum certain, as argued by Tap Room. Tap Room was informed of all changes in billing calculations, including errors, and definite sums were sought.

Because Peachtree did not breach any contract, the trial court correctly granted summary judgment to Peachtree on Tap Room's counterclaim for damages for breach of contract.

2. To recover on a claim of malicious or tortious interference with business relations, a claimant must show four elements. It must prove that the alleged interferer:

> (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the [claimant], and (4) for which the [claimant] suffered some financial injury. A cause of action for intentional interference with contractual rights must be based on the intentional and non-privileged interference by a third party with *existing* contractual rights and relations.

(Citations and punctuation omitted; emphasis in original.) *Athens Intl. v. Venture Capital Properties*, 230 Ga. App. 286, 288 (495 SE2d 900) (1998). On Tap Room's counterclaim for intentional interference with its business relationship with Romano, we agree with the trial court that no evidence was presented showing that Peachtree acted with malice or intent to injure or that it induced a third party not to enter into a business relationship with Tap Room. Moreover, Peachtree properly withheld its consent to the assignment under the privilege created by the lease. "There can be no liability for interference with business relations when the alleged interference is caused by the exercise of an absolute right. [Cits.]" *Kitfield v. Henderson, Black & Greene*, 231 Ga. App. 130, 134 (4) (498 SE2d 537) (1998). Summary judgment was therefore proper on this count of the counterclaim.

3. Tap Room's claim for fraud and misrepresentation is based upon its allegation that a binding agreement was executed to modify the lease. As discussed above, however, no such binding agreement existed. In its rejection of Tap Room's proposed amendment, Peachtree unequivocally demanded strict compliance with the original lease and requested payment of all outstanding charges. The formula for calculating additional charges is clearly set forth in Section 6 (a) of the lease. Given the documentation in the record of early and repeated notification of errors in calculation and the mounting past due charges, we cannot agree with Tap Room that Peachtree misrepresented the amounts owed. Tap Room presented no evidence supporting its claim of fraud and misrepresentation, while Peachtree provided affidavit evidence and detailed billings to support its claim. Allegations or denials in pleadings cannot defeat a motion for summary judgment when the movant has produced evidence to support its claim and the respondent has not. *Oliver v. Thomas*, 158 Ga. App. 388, 389 (280 SE2d 416) (1981). The trial court properly granted summary judgment to Peachtree on this count of Tap Room's counterclaim.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 22, 2004 —
RECONSIDERATION DENIED OCTOBER 18, 2004.

*Walter W. Furlong*, for appellant.
*Wiles & Wiles, John J. Wiles, Noel J. Cotney, Jr.*, for appellee.