IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 5, 2012 Session

## DICK BROADCASTING COMPANY, INC. OF TENNESSEE v. OAK RIDGE FM, INC. ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Knox County**
**No. 150482-3     Michael W. Moyers, Chancellor**

---

**No. E2010-01685-SC-R11-CV - Filed January 17, 2013**

---

The legal issues in this appeal revolve around the assignment of three agreements. The first is a Right-of-First-Refusal Agreement that allowed for an assignment with the consent of the non-assigning party. The agreement was silent as to the anticipated standard of conduct of the non-assigning party in withholding consent. The other two agreements—a Time Brokerage Agreement and a Consulting Agreement—were assignable without consent. The primary issue we address is whether the implied covenant of good faith and fair dealing applies to the non-assigning party's conduct in refusing to consent to an assignment when the agreement does not specify a standard of conduct. Oak Ridge FM, Inc. ("Oak Ridge FM") contractually agreed for Dick Broadcasting Company ("DBC") to have a right of first refusal to purchase Oak Ridge FM's WOKI-FM radio station assets. The agreement was assignable by DBC only with the written consent of Oak Ridge FM. When DBC requested Oak Ridge FM to consent to the assignment of the Right-of-First-Refusal agreement to a prospective buyer, Oak Ridge FM refused to consent. Oak Ridge FM also refused to consent to the assignment of the Consulting Agreement and Time Brokerage Agreement, neither of which contained a consent provision. DBC sued Oak Ridge FM and the other defendants, alleging breach of contract and violation of the implied covenant of good faith and fair dealing. The trial court granted the defendants a summary judgment. DBC appealed, and the Court of Appeals vacated the summary judgment. We hold that where the parties have contracted to allow assignment of an agreement with the consent of the non-assigning party, and the agreement is silent regarding the anticipated standard of conduct in withholding consent, an implied covenant of good faith and fair dealing applies and requires the non-assigning party to act with good faith and in a commercially reasonable manner in deciding whether to consent to the assignment. Because there are genuine issues of material fact in dispute, we affirm the judgment of the Court of Appeals and remand to the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Affirmed; Case Remanded to the Chancery Court for Knox County**

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE
M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined. WILLIAM C.
KOCH, JR., J., filed a concurring opinion.

Robert S. Stone, Knoxville, Tennessee, for the appellant, Oak Ridge FM, Inc., and ComCon
Consultants.

John A. Lucas, Alcoa, Tennessee, for the appellant, John W. Pirkle.

John A. Day and Brandon E. Bass, Brentwood, Tennessee, for the appellee, Dick
Broadcasting Company, Inc., of Tennessee.

**OPINION**

**I.**

DBC and its related companies were the Federal Communications Commission
("FCC") licensees for various radio stations, including WIVK, WIVK-FM, and WIOL in
Knoxville, Tennessee, and WXVO-FM in Oliver Springs, Tennessee. Oak Ridge FM was
the FCC licensee for radio station WOKI-FM in Knoxville. On June 23, 1997, three
separate, but related, contracts (collectively "the WOKI-FM Agreements") were executed
relating to WOKI-FM. The first agreement was a Time Brokerage Agreement between DBC
and Oak Ridge FM wherein Oak Ridge FM sold substantially all of WOKI-FM's broadcast
time to DBC.[1] DBC was required to program the purchased broadcast time to include
entertainment, music, news, commercials, and other matters for a period of seven years. The
Time Brokerage Agreement was binding on the parties and their "successors and assigns"
and contained no limitation on the right of either party to assign the agreement.

The second agreement was a Consulting Agreement between DBC and ComCon
Consultants ("ComCon"), a partnership composed of John W. Pirkle and his son Jonathan
W. Pirkle, employees at Oak Ridge FM. Under the Consulting Agreement, the Pirkles were
paid to serve as consultants to DBC for seven years. The Consulting Agreement was binding
on the parties and their "successors and assigns" and contained no limitation on the right of
either party to assign the agreement.

---

[1] Oak Ridge FM sold 166 hours per week of broadcast time to DBC.

The third agreement was a Right-of-First-Refusal Agreement between Oak Ridge FM and DBC that gave DBC the right of first refusal to purchase at a discounted price substantially all of Oak Ridge FM's assets used in the operation of WOKI. The critical part of the Right-of-First-Refusal Agreement for the purpose of this appeal is the assignment provision, which provides:

> This First Refusal Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, including, without limitation, any assignee of the FCC licenses for [WOKI-FM]. *No party may assign its rights, interests or obligations hereunder without the prior written consent of the other party*, and any purported assignment without such consent shall be null and void and of no legal force or effect; provided, however, that DBC shall be permitted to assign its rights and obligations under this First Refusal Agreement (1) to an entity controlled by James Allen Dick Jr., or by any one or more of the Dick family shareholders of DBC, or (2) to another entity provided that DBC shall be prevented from performing this First Refusal Agreement and provided that DBC shall guarantee the obligations of such other entity as DBC's assignee hereunder.

(Underlining in original; italics added).

On April 30, 2000, DBC entered into a written Asset Purchase Agreement with Citadel Broadcasting Company ("Citadel") selling most of its radio station assets, including its agreements with Oak Ridge FM, for a purchase price of $300,000,000.

On July 18, 2000, DBC sent a letter to Mr. Pirkle as president and principal shareholder of Oak Ridge FM advising him "of the pending acquisition" by Citadel of substantially all of DBC's assets, including the WOKI-FM Agreements, and asking him to consent to the assignment of the Right-of-First-Refusal Agreement. At nearly the same time, Mr. Pirkle, as president of Oak Ridge FM, sent a letter to DBC stating that he had learned of DBC's proposed deal with Citadel and that none of the agreements—the Time Brokerage Agreement, the Consulting Agreement and the Right-of-First-Refusal Agreement—could be assigned without ComCon's and Oak Ridge FM's permission. Mr. Pirkle refused to consent unless they could agree on "an arrangement which satisfies our concerns allowing for the full or partial replacement of DBC with Citadel." In an affidavit filed in support of the motion for summary judgment, Mr. Pirkle acknowledged that on the advice of counsel he refused to agree to the assignment without additional consideration. His goal was to negotiate a "separate and more profitable agreement with Citadel."

To close the Citadel sale, DBC maintained that it had to obtain the assignment of all three agreements,[2] and therefore DBC continued unsuccessfully to request Mr. Pirkle's consent. DBC offered to guarantee Citadel's obligations under the WOKI-FM Agreements, but Mr. Pirkle continued to withhold consent. Eventually DBC finalized the deal with Citadel without the assignment of the agreements and with a $10,000,000 reduction in the sales price.

On March 27, 2001, DBC sued Oak Ridge FM, ComCon, and Mr. Pirkle ("Defendants"), seeking a declaratory judgment that the Time Brokerage Agreement and the Consulting Agreement were assignable by DBC to Citadel without the consent of the Defendants and that Mr. Pirkle, on behalf of Oak Ridge FM, breached the agreements by wrongfully and unreasonably withholding consent to the assignments in order to extract money from the sale to Citadel. DBC further alleged that the implied covenant of good faith and fair dealing applied to the Right-of-First-Refusal Agreement and that the Defendants breached the agreement by failing to act reasonably and in good faith. The Defendants answered, admitting that Mr. Pirkle refused to consent to the assignment of the agreements but denying any breach of contract on their part.

Both sides filed a motion for summary judgment. Following a hearing on the parties' competing summary judgment motions, the trial court held that the implied covenant of good faith and fair dealing was not applicable to the Right-of-First-Refusal Agreement and that the Defendants did not breach the agreement. As to the Consulting Agreement, the trial court held that DBC's interests in this agreement were freely assignable without the Defendants' consent and that there was a genuine issue of fact regarding whether Mr. Pirkle's actions in insisting the agreement was not assignable without his consent, and in withholding that consent, were reasonable under the circumstances. The trial court nevertheless granted a summary judgment to the Defendants, stating that it was "unwilling to find that a party may be held liable for a breach of contract for holding out a good faith but mistaken interpretation of a contract provision," and dismissed the action.

DBC appealed. The Court of Appeals vacated the award of summary judgment, holding that the implied covenant of good faith and fair dealing applies to the assignment clause in the Right-of-First-Refusal Agreement and that genuine issues of material fact made the summary judgment improper. *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, No. E2010-01685-COA-R3-CV, 2011 WL 4954199, at *11 (Tenn. Ct. App. Oct. 19, 2011). DBC and the Defendants each filed an application for permission to appeal.

---

[2] The trial court found in its memorandum opinion and order that "[i]t is conceded by [DBC] that the assignment of all three . . . contracts to Citadel was required for the WOKI-FM portion of the asset transfer agreement between DBC and Citadel to be effective."

We granted both applications primarily to address the following issue: where the parties have contracted to allow assignment of an agreement with the consent of the non-assigning party, and the agreement is silent regarding the anticipated standard of conduct in withholding consent, does the implied covenant of good faith and fair dealing apply to require the non-assigning party to act with good faith and in a commercially reasonable manner in refusing to give its consent for the assignment of the agreement? We hold that the implied covenant of good faith and fair dealing applies to a silent consent clause of an assignment contract provision. When the agreement does not specify the standard of conduct for withholding consent, a party's decision to refuse consent must be made in good faith and in a commercially reasonable manner. We further hold that the trial court erred in considering Mr. Pirkle's testimony that he thought he had a contractual right to block DBC's assignment of the Consulting Agreement by withholding consent based on a discussion with his attorney.

**II.**

Our task in this case involves the interpretation of a contract. We review issues of contractual interpretation de novo. *Perkins v. Metro. Gov't of Nashville & Davidson Cnty.*, 380 S.W.3d 73, 80 (Tenn. 2012) (citing *Allmand v. Pavletic*, 292 S.W.3d 618, 624-25 (Tenn. 2009)). We are guided by well-settled principles and general rules of construction. "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand*, 292 S.W.3d at 630 (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). We initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are "contained within the four corners of the contract." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citing *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011)). The literal meaning of the contract language controls if the language is clear and unambiguous. *Allmand*, 292 S.W.3d at 630. However, if the terms are ambiguous in that they are "susceptible to more than one reasonable interpretation," *Watson*, 195 S.W.3d at 611, we must apply other established rules of construction to aid in determining the contracting parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction. *Id.* (quoting *Smith v. Seaboard Coast Line R.R.*, 639 F.2d 1235, 1239 (5th Cir. Unit B Mar. 1981 (per curiam))).

The clause in the Right-of-First-Refusal Agreement that is the subject of this controversy states: "[n]o party may assign its rights, interests or obligations hereunder without the prior written consent of the other party." This is known as a "silent consent" clause because, although it requires consent of the non-assigning party, it is silent regarding

the standard of conduct required of a party desiring to refuse consent to a requested assignment. DBC argues that the implied covenant of good faith and fair dealing should apply to the silent consent clause to require the non-assigning party to act in good faith and in a commercially reasonable manner in denying consent. The Defendants argue that the silent consent clause should be interpreted to grant the non-assigning party unfettered discretion to deny consent for any or no reason.

Whether the implied covenant of good faith and fair dealing applies to a silent consent clause in an assignment provision of a right of first refusal agreement is an issue of first impression in Tennessee. We hold that the implied covenant of good faith and fair dealing is applicable. Our decision is supported by the established common law of Tennessee and a majority of other jurisdictions.

It is well-established that "[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts." *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). In *Wallace*, this Court observed that "[i]t is true that there is implied *in every contract* a duty of good faith and fair dealing in its performance and enforcement, and a person is presumed to know the law." *Id.* (emphasis added) (quoting *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987) (citing Restatement (Second) of Contracts § 205 (1979))). As early as 1922, this Court imposed an implied condition of reasonableness in a contract requiring the sellers of land to find "satisfactory" the price of land sold at auction in order for the auctioneers to be paid a commission. *Robeson & Weaver v. Ramsey*, 245 S.W. 413, 413 (Tenn. 1922). The contractual provision at issue in *Robeson & Weaver* provided:

> It is agreed . . . that if the said property does not sell for a price that is satisfactory to the [sellers] that they are to pay to the [auctioneers] all actual and legitimate expenses incurred in putting on said sale, . . . but if the sale of said property is confirmed at the price it brought then the [sellers are] to pay the [auctioneers] 5%, five per cent., of the amount the property is sold for.

*Id.* at 413-14. The land sold at auction for a price "several thousand dollars more" than it was worth, but two of the three sellers did not agree to confirm the sale because they were not satisfied with the price. *Id.* at 414. The sellers argued that under the express terms of the contract, they had an absolute unfettered right to find the auction price "unsatisfactory" and refuse to confirm the sale. This Court disagreed, holding that where the sales price substantially exceeded the market price, then the price should be considered satisfactory and the sellers would be "capricious" if dissatisfied with it. *Id.* at 415. The *Robeson & Weaver* Court concluded that because the farm brought more than its value and an amount that should have satisfied a reasonable person, the auctioneers were entitled to their commission.

*Id.* Thus, where the contract was silent as to the standard of conduct anticipated by the parties in the performance of the agreement, i.e., the sellers providing consent to the sale price as "satisfactory," the Court rejected a standard allowing the sellers to act capriciously and required them to act in a commercially reasonable manner. *Id.*; *see also German v. Ford*, 300 S.W.3d 692, 705 n.9 (Tenn. Ct. App. 2009) ("'When a contract is contingent on one party's satisfaction, that party must exercise his or her judgment in good faith and as a reasonable person, when a definite objective test of satisfaction is available; not arbitrarily without bona fide reason for his or her dissatisfaction.'" (quoting 13 Richard A. Lord, *Williston on Contracts* § 38:24 (4th ed. 2000)).

These decisions are in accord with section 205 of the Restatement (Second) of Contracts (1979), which provides that "[*e*]*very contract* imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Emphasis added); *accord Wallace*, 938 S.W.2d at 686; *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004); *TSC Indus.*, 743 S.W.2d at 173; *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986).[3] Tennessee courts have consistently applied the principle that Tennessee law recognizes an implied covenant of good faith and fair dealing in every contract. *Lamar Adver. Co.*, 313 S.W.3d at 791 ("In Tennessee, a duty of good faith and fair dealing is imposed in the performance and enforcement of every contract."); *Jones v. LeMoyne-Owen College*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009) ("[E]very contract contains an implied covenant of good faith and fair dealing . . . ."); *German*, 300 S.W.3d at 706 ("[E]very contract imposes on the parties a duty of good faith and fair dealing in its performance."); *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006) ("A marital dissolution agreement, like any other contract, contains an implied covenant of good faith and fair dealing both in the performance and in the interpretation of the contract.").[4]

---

[3] *See also Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009); *Austa La Vista, LLC v. Mariner's Pointe Interval Owners Ass'n, Inc.*, 173 S.W.3d 786, 792 (Tenn. Ct. App. 2005).

[4] *See also Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) ("Parties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract."); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995) ("Every contract contains an implied duty of good faith and fair dealing in its performance and enforcement."); *ACG, Inc. v. Se. Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1995) ("In this jurisdiction an implied duty of good faith and fair dealing is recognized in every contract in its performance and enforcement."); *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995) ("'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'") (quoting *Covington*, 723 S.W.2d at 645); *Park Place Ctr. Enters., Inc. v. Park Place Mall Assocs.*, 836 S.W.2d 113, 117 (Tenn. Ct. App. 1992) ("Implied in every contract is a duty of good faith and fair dealing in its performance and enforcement."); *McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990) ("[W]e have required contracting parties to deal with each other fairly and in good
(continued...)

In some cases, the courts have expressed this principle as allowing the qualifying word "reasonable" and its equivalent "reasonably" to be read into every contract. *Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003) (quoting *Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980)); *see Hathaway v. Hathaway*, 98 S.W.3d 675, 678-79 (Tenn. Ct. App. 2002) ("[I]t is well settled that '[a] qualifying word which must be read into every contract is the word 'reasonable' or its equivalent 'reasonably.'"(quoting *Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993))); *Hurley*, 922 S.W.2d at 892 (quoting *Moore*, 603 S.W.2d at 739). Our courts have consistently imposed the implied covenant of good faith and fair dealing upon *every contract.* In no case or authority cited herein has the court found an exception to the all-inclusive term "every." The word "every" has been defined as "being each individual or part of a group without exception." *Webster's Ninth New Collegiate Dictionary* 430 (1986).

Learned commentators and treatises confirm that these principles of Tennessee contract law generally conform to established and accepted contract law principles in other American jurisdictions. *See* 17A C.J.S. *Contracts* § 437 (2011) ("Absent an express disavowal by the parties, every contract, whether oral or written, generally contains an implied covenant or duty of good faith and fair dealing in its performance and enforcement." (footnotes omitted)); 17A Am. Jur. 2d *Contracts* § 370 (2004) ("Generally, there is an implied covenant of good faith and fair dealing in every contract, whereby neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (footnotes omitted)); 23 Richard A. Lord, *Williston on Contracts* § 63:22 (4th ed. 2002) ("Every contract imposes an obligation of good faith and fair dealing between the parties in its performance and its enforcement, and if . . . not expressed by its terms in the contract, it will be implied." (footnotes omitted)).

The United States District Court for the Western District of Tennessee, facing a similar issue, applied Tennessee law and imposed a reasonableness requirement upon contractual provisions requiring consent to an assignment where the agreement did not provide for the standard of conduct for withholding consent. *Town & Country Equip., Inc. v. Deere & Co.*, 133 F. Supp. 2d 665, 670 (W.D. Tenn. 2000). In *Town & Country*, an owner of a dealership authorized to sell John Deere products sued and alleged that Deere had breached their agreement by unreasonably withholding approval of the sale of the dealership to anyone but Deere's preferred buyer. *Id.* The parties' agreement provided that the dealer could assign the agreement only with the prior written consent of Deere. *Id.* The district court, citing the implied duty of good faith and fair dealing under Tennessee law, *id.* at 668,

[4](...continued)
faith, even though these duties were not explicitly embodied in their contract . . . [and] have also held the extent of contractual obligations should be tempered by a 'reasonableness' standard.").

concluded that Deere did not have the right to "unreasonably limit or interfere with the sale." *Id.* at 670. The plaintiff, Town & Country, also alleged breach of another silent consent provision, that "Deere breached the dealer agreement by unreasonably rejecting its proposal to relocate the business," *id.* at 669, and the court rejected arguments echoing those made by the Defendants in the present case:

> Deere, however, argues that it had an absolute contractual right to withhold its approval of any relocation, for any reason. This is not borne out by the express terms of the agreement, which provides only that the dealer may not operate the business at any other location *without prior written approval of the Company*. Relocation without prior approval is grounds for immediate cancellation of the agreement. Nothing in the agreement suggests that Deere may withhold that approval unreasonably.

*Id.* (citations omitted). The *Town & Country* court, finding genuine issues of material fact regarding whether Deere acted reasonably in denying Town & Country's request to relocate and whether Deere unreasonably limited or interfered with Town & Country's efforts to sell the dealership by assigning the agreement, denied summary judgment on these issues. *Id.* at 673.

Courts in numerous other jurisdictions have similarly held that a clause requiring consent to the assignment of an agreement, if silent regarding the circumstances under which consent may be withheld, is interpreted in accordance with the implied covenant of good faith and fair dealing to require the exercise of reasonableness and good faith in deciding whether to consent to the assignment. In *Prince v. Elm Investment Co.*, 649 P.2d 820, 824 (Utah 1982), a tenant, the holder of a right of first refusal to purchase the leased property, alleged a violation of the duty of good faith and fair dealing when the seller executed a partnership agreement that amounted to a sale of the property without notice to the tenant and refused to allow the tenant an opportunity to match the offer. The Utah Supreme Court vacated the summary judgment, finding a genuine issue of material fact regarding whether the seller acted in good faith, reasoning as follows: "[w]here a contract provides that the matter of approval of performance is reserved to a party, he must act fairly and in good faith in exercising that right. He has no right to withhold arbitrarily his approval; there must be a reasonable justification for doing so." *Id.* at 825 (citations omitted) (internal quotation marks omitted); *see also Larese v. Creamland Dairies, Inc.*, 767 F.2d 716, 717-18 (10th Cir. 1985) (applying Colorado law to hold that franchisor may not act unreasonably or arbitrarily in withholding consent to transfer franchise rights); *Homa-Goff Interiors, Inc. v. Cowden*, 350 So. 2d 1035, 1038 (Ala. 1977) ("[E]ven where the lease provides an approval clause, a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement."); *Hendrickson v. Freericks*, 620 P.2d 205, 211 (Alaska 1980) ("Where the

lessor's consent is required before an assignment can be made, he may withhold his consent only where he has reasonable grounds to do so."); *Tucson Med. Ctr. v. Zoslow*, 712 P.2d 459, 461 (Ariz. Ct. App. 1985) (following the "growing number of cases [that] have rejected the right of the landlord to arbitrarily refuse his consent and have held that the lessor must act reasonably in withholding his consent"); *Warmack v. Merchs. Nat'l Bank of Fort Smith*, 612 S.W.2d 733, 735 (Ark. 1981) (holding that a silent consent "provision in a lease should not permit a landlord to unreasonably withhold consent"); *Kendall v. Ernest Pestana, Inc.*, 709 P.2d 837, 845 (Cal. 1985) (holding where "the lessor retains the discretionary power to approve or disapprove an assignee proposed by the other party to the contract[,] this discretionary power should . . . be exercised in accordance with commercially reasonable standards"); *Cafeteria Operators L.P. v. AMCAP/Denver Ltd. P'ship*, 972 P.2d 276, 278-79 (Colo. App. 1998) (holding that "without a freely negotiated provision in the lease *giving* the landlord an absolute right to withhold consent, a landlord's decision to withhold consent *must be reasonable*"); *Basnett v. Vista Vill. Mobile Home Park,* 699 P.2d 1343, 1346 (Colo. App. 1984) (holding landlord may not unreasonably refuse consent under silent consent clause because that result "incorporates the principles of fair-dealing and reasonableness and also preserves freedom of contract"), *rev'd on other grounds*, 731 P.2d 700 (Colo. 1987); *Warner v. Konover*, 553 A.2d 1138, 1140-41 (Conn. 1989) ("[W]e hold that a landlord who contractually retains the discretion to withhold its consent to the assignment of a tenant's lease must exercise that discretion in a manner consistent with good faith and fair dealing."); *Fernandez v. Vazquez*, 397 So. 2d 1171, 1174 (Fla. Dist. Ct. App. 1981) ("[W]e hold that a lessor may not arbitrarily refuse consent to an assignment of a commercial lease which provides, even without limiting language, that a lessee shall not assign or sublease the premises without the written consent of the lessor."); *Cheney v. Jemmett*, 693 P.2d 1031, 1034 (Idaho 1984) (in construing contract to sell real estate, "the interpretation of a non-assignment clause conditioned on the consent of the seller . . . necessarily implies that the seller will act reasonably and in good faith in exercising his right of approval"); *Funk v. Funk*, 633 P.2d 586, 589 (Idaho 1981) ("[N]o desirable public policy is served by upholding a landlord's arbitrary refusal of consent merely because of whim or caprice . . . ."); *Jack Frost Sales, Inc. v. Harris Trust & Sav. Bank*, 433 N.E.2d 941, 949 (Ill. App. Ct. 1982) ("[W]here a lease forbids any sublease or assignment without the consent of the lessor, the lessor cannot unreasonably withhold his consent to a sublease."); *Gamble v. New Orleans Housing Mart, Inc.*, 154 So. 2d 625, 627 (La. Ct. App. 1963) (Under a silent consent clause, "the lessor cannot unreasonably, arbitrarily or capriciously withhold his consent"); *Julian v. Christopher,* 575 A.2d 735, 739 (Md. 1990) ("When the lease gives the landlord the right to exercise discretion, the discretion should be exercised in good faith, and in accordance with fair dealing; if the lease does not spell out any standard for withholding consent, then the implied covenant of good faith and fair dealing should imply a reasonableness standard."); *Newman v. Hinky Dinky Omaha-Lincoln, Inc.*, 427 N.W.2d 50, 55 (Neb. 1988) (under silent consent clause, landlord may refuse consent to assignment of lease "only when the lessor has

a good faith and reasonable objection to assignment of the lease or subletting"); *Boss Barbara, Inc. v. Newbill*, 638 P.2d 1084, 1086 (N.M. 1982) ("No logical reason exists for not requiring good faith" in construing silent consent clause); *Littlejohn v. Parrish*, 839 N.E.2d 49, 50, 52-53 (Ohio Ct. App. 2005) (applying good faith doctrine to mortgage prepayment clause "subject to the mortgagee's approval"); *Pac. First Bank v. New Morgan Park Corp.*, 876 P.2d 761, 767 (Or. 1994) (applying good faith doctrine to silent consent clause).

Most, but not all,[5] of the cases we have cited that apply the implied covenant of good faith and fair dealing involve the construction of a lease and a landlord's decision to consent to a tenant's request to sublease the property. However, we do not find the reasoning of these opinions any less persuasive in the context of the particular issue presented here simply because they involve the assignment of a leasehold interest. "The legal effect of the terms of a lease are governed by the general rules of contract construction[]" as in any other contract. *Planters Gin Co.*, 78 S.W.3d at 889; *see also Cali-Ken Petroleum Co. v. Slaven*, 754 S.W.2d 64, 65 (Tenn. Ct. App. 1988) ("Like any other contract, a[] . . . lease should be interpreted using the commonly accepted rules of construction."); *cf. Lamar Adver. Co.*, 313 S.W.3d at 791-92 (applying general contract interpretation principles, including duty of good faith and fair dealing, to lease agreement).[6] Moreover, both the issue and the pertinent considerations are the same in the case of the construction of a silent consent clause in an assignment provision in a lease agreement as in other types of contracts. In each case, the parties have agreed that a contractual right or set of rights shall be assignable only with the consent of the non-assigning party but have not expressly agreed on the standard of conduct anticipated in withholding consent.

The Defendants argue that the position adopted by the courts in other jurisdictions cited and discussed above represents an unpersuasive "minority rule" and that a majority of the courts considering the silent consent clause issue have applied the traditional common law view that parties asked to consent to assignment may refuse arbitrarily or unreasonably refuse. *See generally* James C. McLoughlin, Annotation, *When Lessor May Withhold Consent Under Unqualified Provision in Lease Prohibiting Assignment or Subletting of*

---

[5] *See Larese*, 767 F.2d at 717-18 (involving consent to transfer franchise rights); *Town & Country*, 133 F. Supp. 2d at 667, 670 (involving consent to move dealership to more desirable location and to sell the dealership); *Cheney*, 693 P.2d at 1034 (imposing good faith doctrine in interpreting silent consent requirement in contract to sell property); *Littlejohn*, 839 N.E.2d at 52-53 (applying good faith doctrine to mortgage prepayment clause "subject to the mortgagee's approval"); *Prince*, 649 P.2d at 825 (imposing good faith doctrine to seller's decision not to allow holder of right of first refusal to exercise right).

[6] *See also Fernandez*, 397 So. 2d at 1173-74 ("Underlying the cases abolishing the arbitrary and capricious rule is the now well-accepted concept that a lease is a contract and, as such, should be governed by the general contract principles of good faith and commercial reasonableness." (footnote omitted)).

*Leased Premises Without Lessor's Consent*, 21 A.L.R.4th 188 (1983). Our research indicates that the former "majority rule" approach has steadily eroded over time and is now a minority position among the courts that have considered the issue. In 1977, the Alabama Supreme Court noted that although "[t]he general rule throughout the country has been that, when a lease contains an approval clause, the landlord may arbitrarily and capriciously reject proposed subtenants," the rule "has been under steady attack in several states in the past twenty years." *Homa-Goff Interiors*, 350 So. 2d at 1037; *see also Tucson Med. Ctr.*, 712 P.2d at 461 ("A growing number of cases have rejected the right of the landlord to arbitrarily refuse his consent and have held that the lessor must act reasonably in withholding his consent."); *Fernandez*, 397 So. 2d at 1173 ("The arbitrary and capricious rule is undergoing continued erosion. An increasing number of jurisdictions" are adopting the rule of reasonableness and fair dealing); Alex M. Johnson, Jr., *Correctly Interpreting Long-Term Leases Pursuant to Modern Contract Law: Toward a Theory of Relational Leases*, 74 Va. L. Rev. 751, 753 (1988) (noting "the rapidly expanding list of state courts that have rejected the property rules on alienability of leaseholds and, by applying contract principles, have limited the lessor's right to restrict alienation arbitrarily").

Currently, some fourteen jurisdictions—Delaware,[7] Georgia,[8] Indiana,[9] Kentucky,[10] Massachusetts,[11] Michigan,[12] Minnesota,[13] New Hampshire,[14] New Jersey,[15] New

---

[7] *See Manley v. Kellar*, 94 A.2d 219, 221 (Del. Super. Ct. 1952).

[8] *See Tap Room, Inc. v. Peachtree-TSG Assocs,* 606 S.E.2d 13, 15 (Ga. Ct. App. 2004).

[9] *See First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 605 (Ind. 1990). Indiana does not recognize a general duty of good faith and fair dealing outside the realms of the Uniform Commercial Code or insurance law. *Id.*

[10] *See Hill v. Rudd*, 35 S.W. 270, 271 (Ky. Ct. App. 1896).

[11] *See Slavin v. Rent Control Bd. of Brookline*, 548 N.E.2d 1226, 1228-29 (Mass. 1990).

[12] *See White v. Huber Drug Co.*, 157 N.W. 60, 61 (Mich. 1916).

[13] *See Gruman v. Investors Diversified Servs., Inc.*, 78 N.W.2d 377, 381 (Minn. 1956).

[14] *See Segre v. Ring*, 170 A.2d 265, 266 (N.H. 1961).

[15] *See Muller v. Beck*, 110 A. 831, 832 (N.J. 1920). The law in New Jersey is not entirely clear because in *Jonas v. Prutaub Joint Venture*, 567 A.2d 230, 232 (N.J. Super. Ct. App. Div. 1989), the court recognized "the developing so-called minority view" but declined to decide whether to adopt it under the facts presented. *Id.*

York,[16] North Carolina,[17] South Carolina,[18] Vermont,[19] and Washington[20]—continue to adhere to the older common law view that a landlord may arbitrarily or unreasonably refuse to consent under a silent consent clause in a lease's anti-assignment provision. Seventeen jurisdictions have adopted the "modern" position discussed above, imposing an implied duty of good faith and fair dealing in interpreting a silent consent clause.[21]

The Defendants argue that the trial court was correct in finding that the Right-of-First-Refusal Agreement was unambiguous and complete and holding that to interpret the contract in accordance with the implied covenant of good faith and fair dealing "would be in effect to add a new provision to the contract which the parties were free to add themselves." We disagree. It is true that "the common law duty of good faith does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties." *Wallace*, 938 S.W.2d at 687. Moreover, "'[t]he implied obligation of good faith and fair dealing does not . . . create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement.'" *Lamar Adver. Co.*, 313 S.W.3d at 791 (quoting *Barnes & Robinson Co.*, 195 S.W.3d at 643). However, while the implied covenant of good faith and fair dealing "does not create new contractual rights or obligations, it protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement." *Long*, 221 S.W.3d at 9.

In this case, neither party is asking the Court to create a new contractual right or obligation, alter the terms of the Right-of-First-Refusal Agreement, or insert a new material and un-bargained for condition. *See Kendall*, 709 P.2d at 847 ("It is not a rewriting of a contract, as respondent suggests, to recognize the obligations imposed by the duty of good

---

[16] *See Dress Shirt Sales, Inc. v. Hotel Martinique Assocs.*, 190 N.E.2d 10, 11 (N.Y. 1963).

[17] *See Isbey v. Crews*, 284 S.E.2d 534, 536-37 (N.C. Ct. App. 1981).

[18] *See Dobyns v. S.C. Dep't of Parks, Recreation & Tourism*, 480 S.E.2d 81, 84 (S.C. 1997).

[19] *See B & R Oil Co. v. Ray's Mobile Homes, Inc.*, 422 A.2d 1267, 1267 (Vt. 1980).

[20] *Johnson v. Yousoofian*, 930 P.2d 921, 925 (Wash. Ct. App. 1996).

[21] The states adopting what has now become the majority rule are Alabama, *Homa-Goff Interiors*, 350 So. 2d at 1038; Alaska, *Hendrickson*, 620 P.2d at 211; Arizona, *Tucson Med. Ctr.*, 712 P.2d at 461; Arkansas, *Warmack*, 612 S.W.2d at 735; California, *Kendall*, 709 P.2d at 845; Colorado, *Cafeteria Operators L.P.*, 972 P.2d at 278-79; Connecticut, *Warner*, 553 A.2d at 1140-41; Florida, *Fernandez*, 397 So. 2d at 1174; Idaho, *Cheney*, 693 P.2d at 1034, *Funk*, 633 P.2d at 589; Illinois, *Jack Frost Sales*, 433 N.E.2d at 949; Louisiana, *Gamble*, 154 So. 2d at 627; Maryland, *Julian*, 575 A.2d at 739; Nebraska, *Newman*, 427 N.W.2d at 55; New Mexico, *Boss Barbara, Inc.*, 638 P.2d at 1086; Ohio, *Littlejohn*, 839 N.E.2d at 52-53; Oregon, *Pac. First Bank*, 876 P.2d at 767; and Utah, *Prince*, 649 P.2d at 825.

faith and fair dealing, which duty is implied by law in every contract.").  Both parties are asking the Court to infer a standard of conduct anticipated by the parties in carrying out the rights and liabilities provided for in the contract.  The contractual language at issue provides that the Right-of-First-Refusal Agreement "shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, including, without limitation, any assignee of the FCC licenses for [WOKI-FM].  No party may assign its rights, interests or obligations hereunder without the prior written consent of the other party[.]"  The parties anticipated the possibility of and made allowance for the assignment of the agreement.  They also agreed that a party's attempt to exercise its right to assign the agreement triggers a duty on the part of the non-assigning party to consider and decide whether to consent.  What standard of conduct did the parties anticipate the non-assigning party must exercise in granting or denying consent?  DBC is asking the Court to infer the standard "consent shall not be unreasonably withheld."  The Defendants are asking the Court to infer the standard "consent may be withheld in the decider's sole discretion, for any or no reason, however arbitrary or unreasonable."   The parties could have inserted either provision into the Agreement, and either provision would generally have been enforceable as reflecting the bargained-for intent of the parties.  *See Wallace*, 938 S.W.2d at 686 (observing that contracting parties "'may by agreement . . . determine the standards by which the performance of obligations are to be measured.'" (quoting *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 91 (Tenn. Ct. App. 1988))).  But the contract in this case was silent on this point, leaving the resolution of the ensuing conflict to the courts.

Tennessee courts have imposed a standard of reasonableness in the performance of an agreement when the circumstances have warranted such a construction.  In *Park Place Center Enterprises, Inc. v. Park Place Mall Associates*, the court interpreted a lease that contained both a provision that the tenant may not sublet the property or assign the lease "without the prior consent of the Landlord[,] which consent shall not be unreasonably withheld," and a provision that if requested, the "Landlord may elect to do one of the following: (i) consent thereto; (ii) withhold consent in its sole and absolute discretion; or (iii) terminate this Lease within thirty (30) days after receipt of Tenant's request to assign or sublet."  836 S.W.2d 113, 115 (Tenn. Ct. App. 1992) (emphasis omitted).  When the *Park Place* tenant requested to assign the lease, the landlord "never made any decision as to whether it should consent to the assignment of the lease as requested and merely notified defendant that the lease would be terminated pursuant to the stated lease provision."  *Id.*  Citing the principle that "[i]mplied in every contract is a duty of good faith and fair dealing in its performance and enforcement," *id.* at 117, the court held:

> Clearly, the parties intended that the tenant could not put someone else in its place unless the landlord consented, but the denial of consent *must* have a reasonable basis.  After expressing this intent, [the lease] proceeds to outline

-14-

the options of the landlord when assignment or subletting is sought. These options must be considered in light of the clear mandate of the contract that there must be reasonable basis for a denial of consent by the landlord.

Defendant [landlord] argues that its option to "withhold consent in its sole and absolute discretion" authorizes it to do what it wants without regard to any reasonable basis therefor. We disagree with this interpretation.

. . . .

[Landlord] argues also that the option to terminate the lease provided for in the (iii) [allowing termination of the lease] is absolute. Here again, we must respectfully disagree with [landlord]'s argument. We interpret this provision to mean that the landlord has this option if, and only if, it has first made the determination that there is a reasonable basis for withholding consent to assignment or subletting. In such event, it can then either rest on the withholding of consent or go further and terminate the lease pursuant to the provisions of (iii).

*Id.* at 116, 117.

In *German v. Ford*, the court stated that "[w]hen the parties' bargain is sufficiently definite to be a contract, but they have not agreed with respect to a term that is necessary to a determination of their rights and duties, a term which is reasonable may be supplied by the court." 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009) (citing Restatement (Second) of Contracts § 204 (1981)). The court further observed that "[t]he Restatement frames the issue in the context of the duty of good faith and fair dealing, noting: '[B]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty,' and bad faith can include 'failure to cooperate in the other party's performance.'" *Id.* at 707 (second alteration in original) (quoting Restatement (Second) of Contracts § 205 cmt. d). In such an instance, "a contractual term requiring the act of cooperation may be supplied by the court." *Id.* (citing Restatement (Second) of Contracts § 226 cmt. c).

The court in *Pylant v. Spivey* imposed a standard of reasonableness in interpreting a parent's agreement to pay for a child's college expenses. 174 S.W.3d 143, 147 (Tenn. Ct. App. 2003). Although the agreement did not specify a college or an amount of money, the court held that an obligation to pay such expenses "is subject to an implied condition of reasonableness, at least where no specific college or amount of expenses is set forth." *Id.* at 153. Applying the principle that "courts may incorporate a reasonableness requirement into any contract," *id.* at 152, the court reasoned that its conclusion was "consistent with those

cases holding that where a term is missing from a contract, a reasonable one will be implied." *Id.* at 155. Similarly, in *McClain v. Kimbrough Construction Co.*, the court noted that "[a]s a practical matter . . . contracting parties are not always precise and frequently leave material provisions out of their contracts. In these situations, the courts impose obligations on contracting parties that are reasonably necessary for the orderly performance of the contract." 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990). As examples of such a situation, the *McClain* court observed that "we have required contracting parties to deal with each other fairly and in good faith, even though these duties were not explicitly embodied in their contract" and that "[w]e have also held the extent of contractual obligations should be tempered by a 'reasonableness' standard." *Id.* (citing *Moore*, 603 S.W.2d at 739).

The above-cited opinions confirm that at the time the parties in this case entered into these agreements, Tennessee law was firmly established that the implied covenant of good faith and fair dealing is imposed in the performance and enforcement of every contract. *E.g.*, *Wallace*, 938 S.W.2d at 686. "It is well established that the laws affecting enforcement of a contract, and existing at the time and place of its execution, enter into and form a part of the contract."[22] *Kee v. Shelter Ins. Co.*, 852 S.W.2d 226, 228 (Tenn. 1993) (citing *Robbins v. Life Ins. Co. of Va.*, 89 S.W.2d 340 (1936); *Lunati v. Progressive Bldg. & Loan Ass'n*, 67 S.W.2d 148 (1934); *Webster v. Rose*, 53 Tenn. 93 (1871); *Cary v. Cary*, 675 S.W.2d 491 (Tenn. Ct. App. 1984)). We recently reaffirmed this principle in *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009), stating:

> Because the rights and obligations of contracting parties are governed by the law in effect when they entered into their contract, the courts have recognized that "[t]he lex loci contractus [the law of the place of the contract] becomes as much a part of the contract as if specifically incorporated therein, and, *in the absence of evidence of contrary intention, the parties must be held to have contemplated the application of that law to the terms of their agreement.*

*Id.* (emphasis added) (citation omitted)(quoting *Moak v. Cont'l Cas. Co.*, 4 Tenn. App. 287, 292 (1927)). Consistent with *Ellis*, the application of the duty of good faith and fair dealing is thus a matter of enforcing the parties' agreed-upon contract, and refusing to apply the duty would, as in *Ellis*, "vary the terms of the . . . agreement." 280 S.W.3d at 815.

---

[22] The Time Brokerage Agreement and the Right-of-First-Refusal Agreement each provided that "[t]his Agreement shall be construed and enforced under the laws of the State of Tennessee." The Consulting Agreement provided that "[t]his Agreement is being made and executed in Tennessee and shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee."

-16-

We conclude that where a contractual provision requiring consent to assign an agreement is silent regarding the standard of conduct governing a party's decision whether to consent, such decision must be made in good faith and in a commercially reasonable manner. *See Wallace*, 938 S.W.2d at 686 ("'In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable.'" (quoting *TSC Indus.*, 743 S.W.2d at 173)). The parties are free to contract for a standard of decision-making that is subject to a party's sole, absolute, unfettered discretion, allowing for the denial of consent for any reason, however arbitrary, or for no reason. Such an agreement will be enforceable absent any other public policy ground precluding it. *Wallace*, 938 S.W.2d at 686 (observing that parties may agree to "the standards by which the performance of obligations are to be measured" (quoting *Cullipher*, 752 S.W.2d at 91)). To avoid the imposition of the implied covenant of good faith and fair dealing, the parties must explicitly state their intention to do so. *See* 17A C.J.S. *Contracts* § 437 (2011) ("*Absent an express disavowal by the parties*, every contract . . . generally contains an implied covenant or duty of good faith and fair dealing in its performance and enforcement."(emphasis added) (footnotes omitted)).

Our holding effectuates several desirable results: (1) it is consistent with established precedent in Tennessee case law and a majority of other jurisdictions as cited and discussed herein; (2) it establishes predictability, consistency, and bright-line clarity to contracting parties in the drafting and interpretation of agreements; (3) it guarantees full disclosure and clarity of understanding "on the front end" in reaching a deal if one or both parties want to retain complete and unfettered decision-making authority to provide or deny consent; and (4) it preserves and upholds the parties' right to freedom of contract. *See generally Baugh v. Novak*, 340 S.W.3d 372, 382-83 (Tenn. 2011) (discussing importance of right of freedom of contract).

The Defendants argue that there could have been no breach of the Right-of-First-Refusal Agreement because there was never an offer to buy WOKI-FM's assets, and thus any right of first refusal remained "nascent" and untriggered by a potential sale. We do not agree. The Defendants cite no authority for this proposition other than a general description of the nature of a right of first refusal and how it generally works.[23] The right of first refusal to buy the assets of WOKI-FM at a discounted rate of one million dollars less than an offer from another potential buyer is a valuable asset, and we have already determined that the parties anticipated and agreed this right would be assignable with the other party's consent. DBC's request for consent to assign the Right-of-First-Refusal Agreement triggered a duty on the part of Oak Ridge FM through Mr. Pirkle to consider and decide whether to

---

[23] *See Riverside Surgery Ctr., LLC v. Methodist Health Sys., Inc.*, 182 S.W.3d 805, 811 (Tenn. Ct. App. 2005).

consent and to exercise his discretion in good faith and in a commercially reasonable manner. DBC has alleged that Mr. Pirkle's failure to do so cost DBC more than ten million dollars, reflected in the reduction of the sales price in the agreement with Citadel and other expenses. It will be a matter for the fact-finder at trial to determine whether Mr. Pirkle withheld consent to the assignment unreasonably or in bad faith.[24]

The Defendants also argue that we should apply the maxim *expressio unius est exclusio alterius* as a rule of construction to provide evidence that the parties intended to provide Mr. Pirkle an absolute right to deny consent to assign the Right-of-First Refusal Agreement. The Defendants point to language employed by the parties in the Time Brokerage Agreement—a different agreement executed at the same time as the Right-of-First-Refusal Agreement as part of the same transaction—providing the following:

> *CURE OF FCC-RELATED DEFICIENCIES.* It is the intention of the parties that this Agreement comply fully with the FCC Rules and other federal/state government agency policy or rules concerning agreements of this nature. In the event that there is any complaint, inquiry, investigation, or proceeding at the FCC or other government agency concerning this Agreement and the relationship between the parties, the parties shall cooperate fully in responding to such matter. . . . The parties also agree to modify this Agreement in any reasonable way required to maintain compliance with the FCC Rules or other government agency rules or orders so as to substantially provide the benefits to each party, or its permitted assignee, that were bargained for and contemplated herein and, at the same time, comply with said order, *provided, however, that any such reformation must be approved by the parties, whose approval shall not be unreasonably withheld, delayed or conditioned.*

---

[24] Justice Koch's concurring opinion notes that our majority opinion does not address the scope of the implied duty of good faith and fair dealing. We do not address this issue because it was not briefed or argued on appeal. *See Baugh v. Novak*, 340 S.W.3d 372, 381 (Tenn. 2011) ("As a general matter, the issues addressed by the appellate courts should be limited to those that have been raised and litigated in the lower courts, and which have been fully briefed and argued in the appellate courts.") (citations omitted). Given the procedural posture of this case, this issue must await another day. We do note, however, that although this Court has not had occasion to fully explore the specific contours of the implied covenant of good faith and fair dealing, we have generally observed that "what this duty [of good faith and fair dealing] consists of . . . depends upon the individual contract in each case." *Wallace*, 938 S.W.2d at 686. The inquiry is therefore largely fact-dependent. *See Lamar Adver. Co.*, 313 S.W.3d at 791 ("Whether a party acted in good faith is a question of fact."); 23 Richard A. Lord, Williston on Contracts § 63:22 (4th ed. 2002) ("[W]hether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact.").

(Emphasis added).  This issue was neither raised nor argued in the trial court; the argument was made for the first time on appeal.  Issues raised for the first time on appeal are waived.  *Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007) (quoting *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996)).  Even if it were not waived, this argument would not prevail.  We have observed that the Latin expression *expressio unius est exclusio alterius* is translated as "'the expression of one thing is the exclusion of another (*of the same kind*).'" *D & E Constr. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 519 (Tenn. 2001) (emphasis added) (quoting *City of Knoxville v. Brown*, 260 S.W.2d 264, 268 (Tenn. 1953)).  The subject matter and purposes of the above-cited provision—an attempt to ensure compliance with applicable rules and regulations so that the radio station may remain in legal operation—are vastly different from the consent clause in the anti-assignment provision in the Right-of-First-Refusal Agreement.  The two provisions are not "of the same kind" so as to justify the application of the maxim as a rule of construction.

We are reviewing the trial court's ruling on competing motions for summary judgment.  A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008).  When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party.  *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).  "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion."  *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).  "The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness."  *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

The trial court found that genuine issues of material fact existed regarding the question of whether the Defendants exercised good faith in refusing to consent to the Right-of-First-Refusal Agreement.  Neither party disputes this conclusion.  Each side points to evidence in the record supporting its argument regarding whether Mr. Pirkle demonstrated a commercially reasonable reason and acted in good faith in denying consent to assign the agreement.  We vacate the trial court's grant of a summary judgment to the Defendants because the issue of whether Mr. Pirkle acted in good faith is a question of fact.  *See Lamar Adver. Co.*, 313 S.W.3d at 791 ("Whether a party acted in good faith is a question of fact."); 23 Richard A. Lord, *Williston on Contracts* § 63:22 (4th ed. 2002) ("[W]hether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily

-19-

depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact.").

DBC also alleged that Mr. Pirkle breached the Consulting Agreement by objecting to DBC's proposed assignment when the terms of the agreement did not require either party to consent to the assignment. The Consulting Agreement provided that "[t]his Agreement shall be binding on the parties hereto *and their successors and assigns*." (Emphasis added). This language indicates that the parties intended that the agreement would be assignable to third parties. "Generally, contractual rights can be assigned." *Petry v. Cosmopolitan Spa Int'l, Inc.*, 641 S.W.2d 202, 203 (Tenn. Ct. App. 1982) (citing Restatement (Second) of Contracts § 317(2) (1981)). The Consulting Agreement contained no limitation on the rights of either party to assign the agreement. In response to DBC's attempt to assign the Consulting Agreement as part of the larger deal with Citadel, Mr. Pirkle insisted that his consent was necessary for assignment and refused to give that consent, despite the clear and unambiguous language of the contract that indicated he had no such right.

Mr. Pirkle argues that his refusal to consent to the assignment of the Consulting Agreement was based on the advice of his counsel that the assignment was subject to his consent. The trial court held that the implied covenant of good faith and fair dealing applied to the Consulting Agreement but that it was "unwilling to find that a party may be held liable for a breach of contract for holding out a good faith but mistaken interpretation of a contract provision."

The trial court erred in considering Mr. Pirkle's testimony that he thought he had a contractual right to block DBC's assignment of the Consulting Agreement by withholding consent based on a discussion with his attorney. Mr. Pirkle's testimony regarding his discussion with counsel was extraneous evidence that would be inadmissible under the parol evidence rule, which "does not permit contracting parties to 'use extraneous evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract.'" *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005) (quoting *GRW Enters. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)); *see also* Tenn. R. Civ. P. 56.06 (requiring that affidavits in support of and opposition to summary judgment "shall set forth such facts as would be admissible in evidence"). Moreover, it would be inadvisable to allow a trial court to consider a contracting party's argument that "my lawyer told me it would be okay" as a defense to a breach of contract action where the written agreement clearly and unambiguously supports the contrary conclusion.

## III.

In conclusion, we hold that where the parties have contracted to allow assignment of an agreement only with consent and the agreement is silent regarding the anticipated standard of conduct in withholding consent, the implied covenant of good faith and fair dealing requires a party to act with good faith and in a commercially reasonable manner in refusing consent to assign the agreement. The judgment of the Court of Appeals is affirmed. The trial court's summary judgment in favor of the Defendants is vacated, and the case is remanded to the Chancery Court for Knox County for such further action as may be necessary, consistent with this opinion. Costs on appeal are assessed to the Appellants, John W. Pirkle, Oak Ridge FM, Inc., and ComCon Consultants, and their respective sureties, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE